On February 20, 1981, the defendant Woodstock applied to the Old Lyme zoning board of appeals for a special exception to erect a wind-driven generator atop a sixty-six foot tower to be located on her property at 18 Sandpiper Point Road. Article III, A.6.2, of the Old Lyme zoning regulations permits the construction of alternate energy systems such as wind turbines upon the granting of a special exception.[1]
On April 21, 1981, the board denied the application for the special exception and listed four reasons for its disapproval. First, the plans did not provide for any screening. Second, there were no safeguards with respect to climbing the tower. Third, the plan did not indicate whether setback requirements were met. Finally, the application contained conflicting information concerning the tower's height. The defendant Woodstock appealed that decision to the Superior Court. *Page 438 
On May 22, 1981, while her appeal was still pending, the defendant Woodstock again applied for a special exception to erect the tower. The board concluded that the new application overcame its previous objections and granted the special exception. The plaintiff, an abutting landowner, appealed the second decision to the Superior Court which affirmed the board's decision. The plaintiff now appeals to this court. We find no error.
The plaintiff first claims that the board could not reverse its prior decision by granting the second application. This is not so. A zoning board has the power to consider a second application for a special exception involving the same subject matter when the applicant files a subsequent plan which has been substantially changed to address the objections raised by the board in denying the original application. Rocchi v. Zoning Board of Appeals, 157 Conn. 106, 111, 248 A.2d 922
(1968); Mitchell Land Co. v. Planning Zoning Board of Appeals, 140 Conn. 527, 534-35,102 A.2d 316 (1953).
Examination of the record discloses that the second application proposed a line of trees along the plaintiff's boundary and shrubbery around the base of the tower to meet the screening objections. The new plan proposed the erection of an anti-climbing device made of three-quarter inch plywood and galvanized steel around the base of the tower as a protection against climbing. The application precisely specified the tower's height and included an engineering map indicating that the structure would comply with the applicable open space yard setback requirements. Since the alterations addressed and met the objections prompting the original denial, the board was justified in granting the special exception despite the earlier denial of a similar request. Mitchell Land Co. v. Planning Zoning Board of Appeals, supra, 535. *Page 439 
The plaintiff next claims that the pendency of the defendant Woodstock's appeal from the board's earlier decision acted as a bar to the board's consideration of her second application. We do not agree. "As pointed out, the second application was entirely distinct and separate from the prior one. That [there was] an appeal pending on the same general subject matter did not render the board without power to hear and act upon a new and different application." Mitchell Land Co. v. Planning Zoning Board of Appeals, supra, 536.
The third claim of error involves the fact that a wind turbine or wind generator is not specifically designated as a permitted use in the Waterfront Business District in which this property lies. Since a wind generator is not "customarily incidental" to any use specifically authorized in a Waterfront Business District, the plaintiff argues that it may not qualify as an accessory use and is therefore not permitted. We do not agree.
Article II of the zoning regulations sets forth the permitted uses in each zoning district. There is no district in which a wind generator is described as a permitted use. Article III, A.6.2, however, authorizes such a device upon the granting of a special exception.
Zoning regulations "must be construed as a whole and in such a manner as to reconcile all their provisions so far as possible." Connecticut Sand 
Stone Corporation v. Zoning Board of Appeals,150 Conn. 439, 441, 190 A.2d 594 (1963). The provision of Article III, A.6.2, authorizes the erection of alternate energy systems in any district upon the granting of a special exception. Wind generators thereby become an additional permitted use in any district including the Waterfront Business District in which this property lies, subject however, to the zoning board's determination that the criteria for such a special exception exist. *Page 440 
The plaintiff next claims that Article III, A.6.2, constitutes an impermissible delegation of legislative authority to the zoning board of appeals in violation of General Statutes 8-2. This statute provides that the authority to determine land use reposes solely in municipal zoning commissions. The plaintiff argues that the language of Article III, A.6.2, is so ambiguous, vague and arbitrary that it effectively confers upon the zoning board of appeals legislative authority to designate a land use which is nowhere else in the regulations specifically permitted. We do not agree.
Article III, A.6.2,[2] specifically authorizes "alternate energy systems such as solar collectors and wind turbines." There is nothing imprecise or vague about this language. The fact that alternate energy systems do not appear elsewhere in the regulations as permitted uses does not mean that specifically authorizing their use as a special exception constitutes an impermissible delegation of legislative authority.
The plaintiff's reliance on WATR, Inc. v. Zoning Board of Appeals, 158 Conn. 196, 257 A.2d 818
(1969), in support of his argument here is factually misplaced. In WATR, Inc., the regulation in issue authorized the zoning board of appeals to permit any use not otherwise specifically prohibited elsewhere in the regulations. "[I]t did not limit the board in any way to a determination of whether or not a proposed use falls within one of the special exceptions expressly permitted by the regulation." WATR, Inc. v. Zoning Board of Appeals, supra, 200. Unlike the regulation in WATR, Inc., Article III, A.6.2, specifically and precisely articulates what the use may be. It does not generalize nor is it vague. We therefore conclude that its language does not constitute an impermissible delegation of legislative authority. *Page 441 
The plaintiff next claims that Article III, A.6.2, does not contain adequate standards to guide the zoning board of appeals in making a determination whether to grant or deny an application for an alternate energy special exception. The gravamen of this claim is that subsection (a) fails to provide an adequate standard to guide the board in its determinations. This subsection requires the board to "giv[e] consideration to the effect of the proposed alternate energy system on present and future dwellings in the vicinity."
"`The challenge of unconstitutional delegation of legislative power is successfully met if the [regulation] declares a legislative policy, establishes primary standards for carrying it out or lays down an intelligible principle to which the agency must conform with a proper regard for the protection of the public interest. . . .' Jennings v. Connecticut Light Power Co.,140 Conn. 650, 670, 103 A.2d 535 [1954]; State v. Stoddard, 126 Conn. 623, 628, 13 A.2d 586 [1940]." Clark v. Town Council, 145 Conn. 476, 483-84,144 A.2d 327 (1958). The regulation here, when considered in its entirety, as it must be, amply meets this challenge. It contains both the legislative policy and specific qualifications necessary for the valid exercise of the powers conferred by 8-2[3] upon zoning boards of appeals. Clark v. Town Council, supra, 484.
In addition to the general declaration of subsection (a) to consider the proposed system's effect on neighboring dwellings, the regulation sets forth very particular standards in subsections (b) and (c). Subsection (b) establishes a minimum lot requirement of 30,000 square *Page 442 
feet and prohibits the system's encroachment into open space yard setback requirements. Subsection (c) limits the tower height of a wind turbine to eighty feet as measured from the base to the centerline of the wind turbine, requires that the wind turbine be commercially available and establishes a minimum setback requirement from any lot line as one tower height from the nearest boundary line. Considered in their entirety we conclude that these standards are sufficiently detailed to withstand the claim that an undefined discretion has been impermissibly transferred to the zoning board of appeals.
The plaintiff next claims that the court erred in sustaining the board's interpretation of the setback requirements articulated in Article III, A.6.2(c) (iv), which provide that "the setback from any lot line shall be required to be, at a minimum, one tower height from the nearest boundary line." The plaintiff argues that the proper measurement of the setback distance is one tower height (67') from the boundary line to any part of the energy system including, in this case, the anchor points of the guy wires securing the tower. The board, however, interpreted the regulation to require a setback of one tower height from the boundary line to the base of the tower.
The obvious purpose of such a requirement is to ensure that the tower remains within the confines of its owner's property in the event that it should collapse. The record discloses that the Old Lyme zoning commission had previously interpreted the setback requirement to apply only to the base of the tower.
If the trial court's conclusions are not illogical or unreasonable, it is not this court's function to retry the case. The court was entitled to accord considerable deference to the board's prior interpretations of the disputed regulation. Fedorich v. Zoning Board of Appeals, *Page 443 178 Conn. 610, 616, 424 A.2d 289 (1979). We find no error in the position adopted by the court.[4]
The plaintiff finally argues that there was insufficient evidence to support the position adopted by the board that Article III, A.6.2, had been complied with. We do not agree. Examination of the record discloses that the application together with the presentation offered at the public hearing furnish an adequate basis to support the conclusion awarding the defendant the special exception at issue here.
 There is no error.
In this opinion DALY and F. HENNESSY, Js., concurred.