RICHARD GRASSO *v.* ZONING BOARD OF APPEALS
OF THE GROTON LONG POINT
ASSOCIATION, INC., ET AL.
(AC 20844)

Lavery, C. J., and Dranginis and Flynn, Js.

Argued October 22, 2001—officially released April 16, 2002

*Timothy D. Bates*, with whom, on the brief, was *Lori N. Bartinik*, for the appellant (plaintiff).

*Ralph J. Monaco*, with whom were *Jeffrey T. Londregan* and, on the brief, *Thomas J. Londregan*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiff, Richard Grasso, appeals from the judgment of the trial court denying his application for a writ of mandamus to compel the defendant

zoning board of appeals of the Groton Long Point Association, Inc. (board), to hold a hearing on his appeal from the denial of his application for a zoning permit and for coastal site plan approval by the defendant W. Gordon Lange, the zoning enforcement officer. The plaintiff claims on appeal that the court improperly denied the application because (1) the board's chairman, Gerard Carreira, usurped the authority of the board by dismissing the plaintiff's appeal without consulting with and obtaining the vote of the other board members, (2) the board is statutorily required to hold a hearing and its denial thereof precluded the plaintiff from obtaining further judicial review, (3) the court misstated the "prior application rule" as to revised permit applications and site plans, and (4) even if the court applied the prior application rule correctly, it improperly found that new considerations had not intervened since the plaintiff filed his 1997 application. We agree with the plaintiff's claims and reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. The plaintiff owns shoreline property in Groton Long Point. On April 7, 1990, he applied for and obtained a permit from the Groton Long Point zoning commission, approving his installation of a revetment to prevent his property from eroding. That revetment consisted of seventy-five feet of flat, buried stones and was located about twenty feet above the mean water line. Over the next seven years, much of the sand below the revetment eroded and the stones began to shift. The plaintiff contacted Ronald Kollmeyer, an oceanographic scientist, for advice on how to prevent further erosion of the property.

Kollmeyer recommended that a concrete support be erected just landward of the existing stone revetment to provide stabilization. On August 5, 1997, the plaintiff commenced building the recommended support. Appar-

ently believing that an additional permit was unnecessary,[1] the plaintiff did not seek one prior to beginning the project. Thereafter, zoning authorities issued a cease and desist order regarding the construction of the support.

On September 5, 1997, the plaintiff applied to the Groton Long Point Association zoning officer, Raymond S. Munn, for a permit to build the support (1997 application). The 1997 application included a site plan for the concrete support, an erosion and sedimentation control plan and a coastal site plan. Walter Kunzmann, an engineer, assisted the plaintiff in preparing the application. On April 9, 1998, Munn denied the 1997 application, citing a lack of compliance with specific statutory and regulatory provisions as the basis for the denial.[2] The plaintiff appealed from the denial of the 1997 application to the board, which, after a hearing that concluded on August 3, 1998, upheld the denial for the same reasons cited by Munn.

The plaintiff, with the help of Kollmeyer and Kunzmann, prepared a new application to address the defi-

[1] The plaintiff testified that he believed that the area where the revetment was constructed had been declared "unzoned."

[2] Specifically, Munn explained that: "(1) the coastal site plan was found by [the department of environmental protection] to be inconsistent with the [Connecticut Coastal Management Act], and it was found by the zoning commission to fail to identify and consider at least coastal resource policies (A), (C), and a significant portion of (F) under [General Statutes §] 22a-92 (b) (2) and fail to identify and consider the adverse impacts (B), (C), (F), and (H) under [General Statutes §] 22a-93 (15), and thus the plan was denied by the commission; (2) the soil erosion and sediment control plan was found to be deficient in that it could not control or account for the location of a large portion of the soil or sand excavated for the installation of the concrete structure, while [the plaintiff's] presentation admitted that some of the sand was washed away by waves, and thus the plan was denied and not certified by the commission; and (3) the proposed work (some of which is already completed) does not comply with the [Groton Long Point] zoning regulations 3.1, 3.13.1, 3.13.2 (e), 3.15, 3.26, 7.1, 7.6, 10.3.3, 10.4.1 (4), 10.4.3.1 (2), 10.4.3.3 (1), and 11.1."

ciencies cited for the denial of the 1997 application and submitted that application to the defendant zoning officer, Lange,[3] on February 8, 1999 (1999 application). Lange denied the 1999 application in a May 6, 1999 letter to the plaintiff, in which he reasoned that the 1999 application proposed the same project as the 1997 application and cited additional reasons for the denial.[4]

On May 18, 1999, the plaintiff appealed to the board from Lange's denial of the 1999 application. On June 16, 1999, Carreira dismissed the appeal, informing the plaintiff by letter that "[s]ince this is the same revetment in the same location that was considered by the [board] in hearings last year, we cannot entertain your request for an appeal to the [board]." Carreira did not call a hearing or consult the other members of the board before dismissing the plaintiff's appeal.

On July 13, 1999, the plaintiff applied to the Superior Court for a writ of mandamus to compel the board to hold a public hearing on his appeal from the denial of the 1999 application. After a trial, the court, in a May 5, 2000 memorandum of decision, denied the application, concluding that the prerequisites for the issuance of a writ were not present. Specifically, the court held that the plaintiff had failed to show that he had a clear legal right to a public hearing under the circumstances. This appeal followed. Additional facts will be provided as necessary.

We note at the outset the requirements for the issuance of a writ of mandamus. "Mandamus is an extraordi-

---

[3] Lange succeeded to Munn's position in the interim between the plaintiff's applications.

[4] Lange cited noncompliance with the permit requirements of General Statutes § 22a-361 and of the department of environmental protection. He further stated that it would be "inappropriate" to hold further hearings or otherwise act on the application because the cease and desist order issued in response to the proposed construction was the subject of "ongoing litigation."

nary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Miles* v. *Foley*, 253 Conn. 381, 391, 752 A.2d 503 (2000). We review the court's decision, therefore, to determine whether it abused its discretion in refusing to issue the writ.

I

The plaintiff claims first that the court improperly failed to find that Carreira usurped the authority of the board by dismissing his appeal without first consulting with and obtaining the vote of the other board members. We agree.

The functions and authority of a municipal officer are derived solely from constitutional, statutory or municipal provisions and must be expressly provided for or fairly implied. "When a general power is given to a municipal officer, whatever is necessary for effective exercise of that power is, in the absence of express authority, conferred by implication." *Hartford* v. *American Arbitration Assn.*, 174 Conn. 472, 479, 391 A.2d 137 (1978). Connecticut courts have "long been willing to imply to town officials those powers reasonably necessary to implement authority expressly delegated." Id., 480. In defining the contours of a grant of authority,

"[t]he intent of a statute [or ordinance] is to be determined from its language where the language is plain and unambiguous. The enactment, in such a case, speaks for itself and there is no occasion to construe it." *Carruthers* v. *Vumbacco*, 4 Conn. App. 168, 171, 493 A.2d 259 (1985).

The applicable provisions here are clearly worded. Section 12.2 of the Groton Long Point Association zoning regulations provides that "[t]he Zoning Board of Appeals shall elect a Chairman from among its members and all meetings of the Board shall be held at the call of the Chairman and at such other times as the Board may determine and shall be open to the public." Section 12.3 provides that "[t]he Chairman, or, in his absence, the Acting Chairman, may administer oaths and compel the attendance of witnesses." These regulatory provisions mirror the language of the state statute enabling the creation of local zoning boards of appeal. See General Statutes § 8-5. Other than providing that he or she may designate alternate board members in the event of an absence; General Statutes § 8-5a; neither the statutes nor the Groton Long Point Association regulations explicitly grant any additional powers to the chairman of a zoning board of appeals.

The applicable provisions, therefore, explicitly confer only specific, narrowly defined powers on the chairman. Collectively, those powers may be characterized as those of oversight of the administrative mechanics of the board's business—scheduling meetings, calling witnesses to attend and administering oaths. In no explicit terms is the chairman authorized to act on behalf of the board as to any substantive matter,[5] such as the

---

[5] The defendants' characterization of Carreira's decision to dismiss the plaintiff's appeal as a "procedural determination," akin to establishing whether the requisite filing fee is attached to an application, is disingenuous and wholly unconvincing. As more fully explained in part II of this opinion, Carreira's decision necessarily precluded any further review of the plaintiff's application before either the board or the Superior Court, types of review that the plaintiff is statutorily entitled to seek.

determination of the disposition of an appeal. The power to decide the issues that are the subject matter of hearings can in no way be implied from the power to oversee the procedural aspects of those hearings. This is particularly so when decision-making authority on appeals is specifically allocated to the *board* itself, and not its individual members, by both statute and regulation. General Statutes § 8-6; Groton Long Point Association Zoning Regs., § 12.6.

Our decisions support the notion that a board, in disposing of matters statutorily committed to it, must act as a whole. "Generally, it is the function of a *zoning board* or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Emphasis added; internal quotation marks omitted.) *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991). In searching the record for evidence supporting a board's decision to determine whether that decision can be sustained, we have noted that "[e]vidence of the individual views of one member [of the zoning board of appeals] is not available to show the reasons actuating the board or the grounds of its decision. These can only be shown by a *vote of the board.*" (Emphasis added; internal quotation marks omitted.) *Caserta* v. *Zoning Board of Appeals*, 23 Conn. App. 232, 238, 580 A.2d 528 (1990), rev'd on other grounds, 219 Conn. 352, 593 A.2d 118 (1991).

"It is a well-settled rule that when municipal councils or boards . . . are called upon to perform . . . acts involving discretion and judgment in administering the public affairs, *they can only act at authorized meetings duly held. The [board]* . . . must meet and act as a board . . . . The members cannot make a valid determination binding upon the [plaintiff] by their assent separately and individually expressed. . . . Wherever

a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. . . . All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment of each and all the members, is endangered by any other rule." (Emphasis in original; internal quotation marks omitted.) *S.I.S. Enterprises, Inc.* v. *Zoning Board of Appeals*, 33 Conn. App. 281, 287, 635 A.2d 835 (1993), quoting *Jack* v. *Torrant*, 136 Conn. 414, 420, 71 A.2d 705 (1950).

Because the applicable statutes and regulations do not confer on a chairman alone the power to determine the disposition of appeals, the court's failure to conclude that Carreira exceeded his authority in deciding unilaterally to dismiss the plaintiff's appeal was improper.

II

The plaintiff also claims that the board is statutorily required to hold a hearing and that its failure to do so cut off his right to further judicial review of the denial of the 1999 application. We agree.

Our determination of whether the plaintiff has a right to a hearing on his appeal from the denial of the 1999 application requires us to construe the relevant statutory and regulatory provisions governing zoning boards and appeals. "The purpose of statutory construction is to give effect to the intended purpose of the legislature. . . . If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Citations omitted; internal quotation marks omitted.) *State* v. *DeFrancesco*, 235 Conn. 426, 435, 668 A.2d 348 (1995). Any ambiguity

over whether a particular provision is mandatory or directory may be resolved by examining the statute's language, its legislative history and the statutory context. *Doe* v. *Statewide Grievance Committee*, 41 Conn. App. 671, 676, 677 A.2d 960 (1996), rev'd on other grounds, 240 Conn. 671, 694 A.2d 1218 (1997).

General Statutes § 8-6 (a) provides in relevant part that "[t]he zoning board of appeals *shall* have the following powers *and duties*: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ." (Emphasis added.) Sections 12.6 and 12.6.1 of the Groton Long Point Association zoning regulations mirror the statute, providing that the board "*shall* have the following powers *and duties*: To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the Zoning Official, Building Official, or any other official charged with the enforcement of these Regulations." (Emphasis added.)

General Statutes § 8-7 provides in relevant part that "[a]n appeal may be taken to the zoning board of appeals by any person aggrieved [by a decision of a zoning official] . . . . Such board *shall*, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. . . ." (Emphasis added.) Pursuant to General Statutes § 8-8 (b), "any person aggrieved by any *decision of a board* may take an appeal to the superior court for the judicial district in which the municipality is located. . . ." (Emphasis added.) The remaining portions of §§ 8-7 and 8-8, as well as § 8-7d, set forth specific and extensive procedural requirements for both hearings before boards and appeals before courts.

The legislature's use of terms such as "shall" and "duty" strongly suggests that it intended that the board's

responsibility to hold a hearing be a mandatory one, as does the further legislative provision of detailed procedural, notice, timing and publication requirements for board hearings in §§ 8-7 to 8-7d. Although "our past decisions have indicated that the use of the word shall, though significant, does not invariably create a mandatory duty," where "the prescribed mode of action is the essence of the thing to be accomplished" and "relates to a matter of substance [rather than] a matter of convenience," it follows that the statutory provision is intended to be mandatory. (Internal quotation marks omitted.) *State* v. *Trahan*, 45 Conn. App. 722, 730–31, 697 A.2d 1153, cert. denied, 243 Conn. 924, 701 A.2d 660 (1997). Here, the stated purpose of § 8-6 is to enumerate the "powers and duties" of zoning boards of appeal, one of which is hearing and deciding appeals from decisions of zoning officials. In addition, the entirety of § 8-7 is devoted to establishing the required protocol for appeal hearings before boards; the holding of a proper hearing is the essence of what the statute seeks to accomplish. Furthermore, the provision of § 8-8 requiring a "decision" of a zoning board as a prerequisite to obtaining review of a zoning decision in the Superior Court presupposes that an aggrieved person will be able to obtain such a decision as a matter of right.

This interpretation finds support in our case law. In *Palmieri* v. *Zoning Board of Appeals*, 32 Conn. Sup. 625, 627, 349 A.2d 731 (1975), in deciding whether a writ of mandamus should issue, an appellate panel concluded that the board's duty to hear an appeal from the ruling of a zoning officer was a mandatory one. The court noted that "[b]efore the plaintiff could avail himself of the right to appeal pursuant to the provisions of § 8-8 of the General Statutes, it was necessary that the [board] render a decision because only a decision is appealable. The [board] had a duty to hear the appeal,

and a writ of mandamus is the proper action to compel the performance of such a duty." Id.

Other decisions have referred to the mandatory nature of a hearing under § 8-7, though not directly so holding. For example, in *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 724 A.2d 1108 (1999), our Supreme Court noted that "a local zoning board of appeals reviewing the decision of a municipal zoning officer *must* hold an open hearing, in order to afford an opportunity to interested parties to make known their views and to enable the board to be guided by them." (Emphasis added; internal quotation marks omitted.) Id., 739–40. Similarly, in outlining the procedure for appealing from a decision of a planning director to deny a site plan application, our Supreme Court has stated that "[i]t is the board's *responsibility, pursuant to the statutorily required hearing,* to find the facts and to apply the pertinent zoning regulations to those facts." (Emphasis added; internal quotation marks omitted.) *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 468, 778 A.2d 61 (2001); see also *Dietzel* v. *Planning Commission*, 60 Conn. App. 153, 162, 758 A.2d 906 (2000).

Finally, the notion that a property owner must obtain a decision from a zoning board of appeals prior to seeking review in the Superior Court is well established in our case law requiring the exhaustion of administrative remedies. See, e.g., *Borden* v. *Planning & Zoning Commission*, 58 Conn. App. 399, 755 A.2d 224, cert. denied, 254 Conn. 921, 759 A.2d 1023 (2000); *Masayda* v. *Pedroncelli*, 43 Conn. App. 443, 683 A.2d 23 (1996); *Prospect Gardens Convalescent Home, Inc.* v. *Norwalk*, 32 Conn. Sup. 214, 347 A.2d 637 (1975).

For the foregoing reasons, we conclude that the court incorrectly held that the defendants were not required to hold a hearing on the plaintiff's 1999 application.[6]

[6] The defendants argue, and the court held, that the plaintiff was not entitled to a hearing before the board because the 1999 application was

## III

Next, the plaintiff claims that the court misstated the "prior application rule" regarding revised applications for permits and site plans and, instead, applied the rule applicable to variances. We agree.

An exception or permit[7] "is not to be confused with a variance. While the two words have often been treated as synonymous, they are readily distinguishable. . . . Under a provision usually found in municipal zoning regulations . . . a variance may be granted only when the application of the law presents a practical difficulty or imposes an unnecessary hardship upon the property owner. An exception [or permit], however, is not . . . contingent upon the existence of either difficulty or hardship. In the case of a variance, a literal enforcement of the regulations is disregarded; [in contrast] the condi-

substantially the same as the 1997 application. As more fully discussed in part III of this opinion, it is true that *as to the same application,* "[a]s a general rule, an administrative tribunal, such as a zoning board of appeals, is not permitted to reverse itself unless a change of circumstances intervenes which materially affects the merits of the case." *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 111, 248 A.2d 922 (1968). "The board can grant a *second application* [for an exception or permit] which has been substantially changed in such a manner as to obviate the objections raised against the original application"; (emphasis added) id.; however, it does not follow that the rule against reversal excuses a board from holding a hearing to determine whether the applications are, in fact, identical or rather, whether the later application responds adequately to the reasons raised by the zoning official in denying the earlier application. See part III of this opinion. A board does have discretion to decide whether two applications request substantially the same relief. *Fiorilla* v. *Zoning Board of Appeals,* 144 Conn. 275, 279, 129 A.2d 619 (1957). Nonetheless, a writ of mandamus may issue to compel municipal officials to perform a mandatory duty, even if that duty can be performed in a discretionary manner. *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 718–19, 427 A.2d 866 (1980).

[7] The terms "special exception" and "special permit" are interchangeable. *Anastasi* v. *Zoning Commission,* 163 Conn. 187, 190, 302 A.2d 258 (1972). We recognize that this case involves a zoning permit rather than a special permit. The two are similar, however, as to the salient feature, i.e., both are contemplated by the regulations, and the conditions for granting them may be found therein.

tions permitting an exception [or permit] are found in the regulations themselves and, furthermore, those conditions may not be altered." (Citations omitted.) *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, 140 Conn. 527, 531–32, 102 A.2d 316 (1953); see also Groton Long Point Association Zoning Regs., §§ 7.1,[8] 7.1.1.[9]

"It is usually said that the essential difference between a variance and a special permit[10] is that the variance permits the owner to develop and use the property in a manner *forbidden* by the zoning regulations, while the special permit authorizes those uses that are explicitly *permitted* in the regulations (albeit subject to certain conditions not applicable to other uses in the district)." (Emphasis in original.) T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 177, citing *Burlington* v. *Jencik*, 168 Conn. 506, 509, 362 A.2d 1338 (1975); see also *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, supra, 140 Conn. 532–33; 83

---

[8] Groton Long Point Association Zoning Regulation 7.1, titled "Building Permits and Zoning Permits," provides in relevant part: "No construction, reconstruction, replacement, alteration or other work . . . shall be done on any lot, including but not limited to buildings, walls, fences or docks, until a permit has been duly issued. No zoning permit . . . shall be issued . . . *unless the plans and intended use are such that [the construction] will conform in all respects with the provisions of these Regulations* . . . ." (Emphasis added.)

[9] Groton Long Point Association Zoning Regulation 7.1.1, titled "Procedure for Obtaining a Zoning Permit and/or a Building Permit," provides in relevant part: "The procedure for obtaining a permit for proposed construction is dependent upon construction category, as follows . . . b. Category II . . . construction of accessory buildings, fences, walls, or docks . . . Procedure . . . (1) applicant submits a completed Application for Zoning Permit to the Zoning Official; (2) *the Zoning Official approves the permit if all Zoning Regulations are complied with;* (3) if approved, the applicant then applies for a Building Permit with the Building Official; (4) if the Zoning Permit is denied, the applicant may either revise and resubmit the application or appeal to the Zoning Board of Appeals for a variance. . . ." (Emphasis added.)

[10] See footnote 7.

Am. Jur. 2d 803–804, Zoning and Planning §§ 831, 960 (1992). Similar to a permit application, a site plan may be required by a zoning agency[11] "to aid [it] in determining the conformity of a proposed building, use or structure with specific provisions of [the] regulations." General Statutes § 8-3 (g). An application for site plan approval "may be modified or denied [by the agency] only if it fails to comply with requirements already set forth in the . . . regulations." General Statutes § 8-3 (g); see also General Statutes § 22a-109 (establishing special criteria for coastal site plans). "Unlike a variance which involves the varying of a zoning ordinance, a special exception [or zoning permit or site plan][12] deals with compliance with the ordinance and imposes upon a board of zoning appeals the duty to grant an exception [or zoning permit or to approve a site plan] once the conditions specified in the ordinance have been met." 83 Am. Jur. 2d, supra, 804.

The distinction between variances and permits is reflected in the differing circumstances under which a board of appeals may revisit an earlier decision as to each type of application. In considering a subsequent variance application where it has already denied a similar prior one, "[a] zoning board of appeals is generally precluded from reversing a prior decision unless there has been a material change of conditions, or other considerations have intervened affecting the merits, and

---

[11] Groton Long Point Association Zoning Regulation 3.26 requires, under certain circumstances, the submission of "a soil erosion and sedimentation control plan" as a "prerequisite to issuance of a Zoning Permit for proposed development." Groton Long Point Association Zoning Regulation 11.1 subjects all "structures fully or partially within the coastal boundary" to statutory "coastal site plan review requirements and procedures . . . ." See General Statutes § 22a-109. In this case, the plaintiff submitted both a soil erosion and sedimentation control plan and a coastal site plan along with his applications for a zoning permit. In reviewing the denial of the 1997 application, the board found that both plans and the permit application did not comply with the applicable statutory or regulatory provisions.

[12] See footnote 6.

no vested rights have arisen." *Wright* v. *Zoning Board of Appeals*, 174 Conn. 488, 492, 391 A.2d 146 (1978). The board is disallowed from revisiting its prior determination that the requirements for a variance[13] are not present because, if a reversal of that determination was allowed, "there would be no finality to the proceeding [and] the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence." (Internal quotation marks omitted.) *Sipperley* v. *Board of Appeals on Zoning*, 140 Conn. 164, 167, 98 A.2d 907 (1953), overruled on other grounds, *Fiorilla* v. *Zoning Board of Appeals*, 144 Conn. 275, 279, 129 A.2d 619 (1957).[14]

"Finality of decision is just as desirable in the case of an exception [or permit] as in one involving a variance. Because of the nature of an exception [or permit], however, the power of a zoning board to review a prior decision denying the exception [or permit] is not limited, as it is when a variance is sought, to the two situations mentioned above. An additional situation arises when the owner requesting an exception [or permit] files a subsequent application altering the plan under which he previously sought the exception [or permit], in order to meet the reasons for which the

[13] "[T]he authority of a zoning board of appeals to grant a variance under General Statutes § 8-6 (3) requires the fulfillment of two conditions: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 368, 537 A.2d 1030 (1988).

[14] General Statutes § 8-6 (a) (3), which empowers a zoning board of appeals to grant variances, provides in relevant part: "No such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier such application." We note that § 8-6 (a) (1), which empowers boards to hear appeals from zoning officials' decisions, such as the denial of permit applications, does not contain a similar grant of discretion.

board denied the prior one. . . . To justify a special exception [or permit] . . . it must appear that the manner in which the owner proposes to use his property will satisfy the conditions imposed by the regulations. If, therefore, upon a second request for a special exception [or permit], there is a substantial change in the manner of use planned by the owner, the board is faced with an application materially different from the one previously denied. It may well be that the new plan, by reason of the changes made therein, will succeed, where the former failed, in satisfying the conditions enumerated in the regulations. Under such circumstances, the board is not precluded from granting the second application merely because it has denied the first." (Citations omitted.) *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, supra, 140 Conn. 534; see also *Shippee* v. *Zoning Board of Appeals*, 39 Conn. Sup. 436, 438, 466 A.2d 328 (1983); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 22.12, p. 502.

"A subsequent [permit] application made in order to bring a prior application into compliance with applicable regulations, no matter how minor the work involved may be, is clearly not minor in regard to its significance and effect." (Internal quotation marks omitted.) *Koepke* v. *Zoning Board of Appeals*, 230 Conn. 452, 458, 645 A.2d 983 (1994). "The board may grant the exception [or permit] once it finds that all the requirements of the ordinance have been satisfied . . . ." *Rocchi* v. *Zoning Board of Appeals*, 157 Conn. 106, 111, 248 A.2d 922 (1968).

"The same concept would apply to a . . . site plan application, where . . . the property owner is basically engaged in an exercise to present an application which conforms with the . . . existing regulations. . . . A site plan is only required to comply with the specific requirements of the existing zoning regulations. The

fact that a prior site plan did not comply does not allow the zoning commission to turn down one which does." R. Fuller, supra, p. 503.

In this case, the court in its memorandum of decision did not recognize the distinction between prior applications for variances and those for permits and site plans. It relied largely on cases involving variances[15] and not those involving permits or special exceptions, and cited and applied only the narrower rule regarding similar prior variance applications.

The court focused on protecting the board from "harassment" and did not acknowledge that the plaintiff had a right to revise his application so as to bring the proposed construction into compliance with the applicable regulations. It noted that the plaintiff, in the 1999 application, had "developed his case in more detail" and outlined the differences between the applications, but concluded that, because the details comprised information known to the plaintiff in 1997 that could have been included in the 1997 application, "there were no new conditions or considerations" that would allow the board to revisit the matter. As previously explained, a proper inquiry would have addressed the question of whether the additional details included in the 1999 application corrected the deficiencies cited by the board for the denial of the 1997 application, so as to bring the proposed work into compliance with the applicable regulations. In the context of a permit application, it is of no consequence that the information was previously available to the plaintiff. We therefore conclude

---

[15] See, e.g., *Grillo* v. *Zoning Board of Appeals*, supra, 206 Conn. 362; *Malmstrom* v. *Zoning Board of Appeals*, 152 Conn. 385, 390–91, 207 A.2d 375 (1965); *Bright* v. *Zoning Board of Appeals*, 149 Conn. 698, 705, 183 A.2d 603 (1962); *Fiorilla* v. *Zoning Board of Appeals*, supra, 144 Conn. 278–79; *Sipperley* v. *Board of Appeals on Zoning*, supra, 140 Conn. 164; *St. Patrick's Church Corp.* v. *Daniels*, 113 Conn. 132, 137, 154 A. 343 (1931).

that the court's analysis in this regard was incorrect in law.

## IV

The plaintiff's last claim is that even if the court stated the prior application rule correctly, it applied it improperly when it found that new considerations had not intervened since the plaintiff filed the 1997 application. The defendants argue, in this regard, that the court's de novo determination that there were no changed conditions or intervening considerations was correct and, further, that it cured the board's failure to hold a hearing on the matter. Because we have determined that the court applied the incorrect standard in evaluating whether the board could have approved the 1999 application, we conclude that the court's determination was necessarily flawed and could not have cured the board's failure to hold a hearing to consider whether the objections to the 1997 application were answered by the provision of additional information in the 1999 application such that the zoning official's denial of the latter was improper.

Our resolution of the foregoing issues leads us to conclude that the court abused its discretion in denying the plaintiff's application for a writ of mandamus compelling the defendants to hold a hearing on his appeal from the denial of the 1999 application. As explained in parts I and II of this opinion, Carreira, as chairman, lacked the power to make a determination on the plaintiff's appeal himself; rather, the board had a mandatory statutory duty to hold a hearing on the appeal and to determine, as a board, what the disposition should be. Although a board may exercise some discretion in determining whether a revised permit application complies with the applicable regulations, it lacks the discretion to refuse to make that determination at all when an applicant brings a proper appeal from a zoning official's

decision. The plaintiff has no other alternative for contesting the official's decision because, before he may exercise his statutory right to appeal from that decision to a trial court, he must first exhaust the administrative remedy of an appeal to the board.

The plaintiff has established that (1) the law imposes a mandatory duty on the board to hear his appeal, (2) he has a clear legal right to a hearing and (3) there is no other specific adequate remedy available to contest the zoning officer's decision, and he has therefore met the requirements for a writ of mandamus compelling the board to act. See *Miles* v. *Foley*, supra, 253 Conn. 391.

"The writ of mandamus is designed to enforce a plain positive duty, upon the relation of one who has a clear legal right to have it performed, and where there is no other adequate legal remedy." (Internal quotation marks omitted.) *Milford Education Assn.* v. *Board of Education*, 167 Conn. 513, 518, 356 A.2d 109 (1975). "If a public official or public agency has a duty to perform a particular act and fails in the discharge of that duty, a writ of mandamus is the proper remedy for compelling performance of the act." (Internal quotation marks omitted.) *State ex rel. Brooks* v. *Hitchcock*, 33 Conn. Sup. 686, 690, 367 A.2d 692 (1976).

The judgment is reversed and the case is remanded with direction to render judgment issuing a writ of mandamus compelling the defendants to hold a hearing to consider the plaintiff's revised application for a zoning permit and coastal site plan.

In this opinion DRANGINIS, J., concurred.

FLYNN, J., concurring in part and dissenting in part. While I agree with the majority that the chairman of the zoning board of appeals could not act on behalf of the entire board in deciding that no hearing should be held on the plaintiff's appeal to the board from the

denial of a zoning permit and coastal site plan, I do not agree that the plaintiff has shown a clear legal right to a hearing which is the sine qua non before a writ of mandamus will issue ordering a hearing to be held. Mandamus is an extraordinary equitable remedy. The plaintiff finds himself subject to a cease and desist order because he went ahead and built a concrete seawall without a permit, despite the knowledge that such a permit was required when he built an earlier stone revetment. I would go no further than to remand with a rescript that mandamus issue ordering the entire board to act on the plaintiff's appeal. I would leave to the board, in the first instance, as the administrative body charged with that function, the determination of whether the essence of the renewed proposal to obtain approval nunc pro tunc of the existing concrete wall is so similar in nature to the prior applications that no further hearing is necessary. That is an administrative decision, which the board as fully constituted has not yet made, but has the right to determine before the matter is ripe for courts to intervene or review.