FAITH KILBURN *v.* PLAN AND ZONING COMMISSION
OF THE TOWN OF WEST HARTFORD
(AC 29248)

DiPentima, Gruendel and Robinson, Js.

Argued January 6—officially released April 14, 2009

*Danielle B. Omasta*, with whom was *Bruce S. Beck*, for the appellant (plaintiff).

*Patrick G. Alair*, deputy corporation counsel, for the appellee (defendant).

*Opinion*

ROBINSON, J. This case involves a clash between the defendant, the plan and zoning commission of the town of West Hartford, and the owner of twenty-two shih tzus. The plaintiff, Faith Kilburn, the owner of the dogs, appeals from the judgment of the trial court dismissing her appeal from the defendant's denial of her application for a special use permit. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. The plaintiff, a West Hartford resident, applied for a special use permit from the defendant on November 3, 2004 (2004 application).[1] In her application, the plaintiff requested a permit to maintain a kennel as defined by § 177-2 of the West Hartford Code of Ordinances (ordinances), to keep and to maintain twenty-two small indoor dogs on her premises. The ordinances require that any town resident who owns more than two dogs apply for a special use permit. See West Hartford Code of Ordinances § 177, attachment 1:3 (listing "kennel" as a permitted use in one-family residence districts subject to issuance of building or zoning permit and subject to § 177-42 [A]); § 177-2 (defining "kennel" as "[t]he keeping of three or more dogs over the age of six months"); § 177-38 (requiring special use permit before special permit use of land can be established); § 177-42 (A) (1) (setting forth procedures for obtaining special use permit).[2]

---

[1] The plaintiff appears to have requested the permit following a complaint from a neighbor.

[2] Section 177-38 of the ordinances provides in part: "No structure shall be erected, expanded or structurally altered and no land use shall be established until a permit therefor has been issued, as required below. A. A special permit use, identified as such in § 177-6B and C, in accordance with the procedure set forth in § 177-42A."

Section 177-42, entitled "Application approval procedure," provides in part: "Applications for required permits shall be reviewed and acted upon as follows . . . (1) All special permit uses, identified as such in § 177-6B

On December 6, 2004, the defendant unanimously voted to approve conditionally the plaintiff's application and granted her a special use permit (2004 permit) effective December 24, 2004. The defendant attached the following conditions to its approval of the plaintiff's application: "a. The permit for a non-commercial residential scale 'kennel' is approved provided that the number of dogs on the premises is reduced to three (3) dogs. b. The required reduction in the number of dogs on site from twenty two (22) to three (3) shall be met within two (2) years from the date of this approval or no later than December 6, 2006." The defendant further found that "[a]lthough . . . the dogs are receiving proper care and attention, the keeping of twenty-two (22) dogs on the premise is not appropriate or compatible with the residential neighborhood and further it is a violation of the West Hartford Zoning Regulations."

The record does not indicate that the plaintiff took any substantive steps to reduce the number of dogs in her care during the ensuing two years, and, on October 20, 2006, she filed an application for a special use permit (2006 application) with the defendant requesting that

and C, are declared to possess characteristics of such unique and distinct form that each specific use shall be considered as an individual case. Special permit uses shall be deemed to be permitted uses in their respective districts, subject to the satisfaction of the requirements and standards set forth therein, in addition to all other requirements of this chapter. (2) The Town Planner shall refer applications for special use permits to the Planning Commission, which shall hold a public hearing within 65 days after having received the application at a regular meeting and shall make a decision within 65 days after the public hearing. The Commission shall give notice prior to the date of the hearing by advertisement in a newspaper as required by state statute and by sending by mail a copy of such notice to the applicant and to the owners of all property adjoining the property which is the subject of such an application. (3) The applicant shall post a sign giving notice of his or her application in a conspicuous place on the property for which a special use permit approval is sought, visible from a public street. Said sign shall be posted seven days before the date of the hearing, shall remain in place until the public hearing and shall be removed not later than three days after the public hearing. . . ."

she be able to keep all twenty-two dogs. As part of her application, the plaintiff proposed that as the dogs pass away, she would not replace them. She represented in a letter attached to the application that she has owned the dogs for the previous twelve years, that her property has 3521 square feet of living area and that she lets the dogs outside in small groups of six to eight for no more than five minutes each, and not at all after 8 p.m.[3]

A public hearing was held on December 4, 2006, and the defendant considered the plaintiff's application requesting approval to modify her previously approved special use permit. The defendant unanimously voted on that date to deny the plaintiff's application and made the following findings: "The proposed [s]pecial [u]se [p]ermit does not comply with the finding requirements of Section [177-42 (A) (5) (a)] of the [ordinances]. In particular the [defendant] noted that the keeping of twenty-two (22) dogs on the premises is not appropriate or in harmony with the residential neighborhood. . . . The [defendant] provided the applicant with a reasonable amount of time to reduce the number of dogs [through its conditional approval of the plaintiff's 2004 application]."[4]

The plaintiff appealed from the defendant's decision to the Superior Court on January 16, 2007, and filed an amended appeal on February 1, 2007, and a second amended appeal on May 2, 2007. The plaintiff claimed that the defendant's action in denying her permit application was illegal, arbitrary and an abuse of discretion and requested judgment reversing the defendant's decision. On July 26, 2007, the court issued a memorandum

[3] The record does not indicate the size of the plaintiff's lot.

[4] Section 177-42 (A) (5) (a) of the ordinances provides that certain standards must be met before the defendant may grant a special use permit application and that the defendant may attach conditions to the approval of a permit application to ensure that the standards are met.

of decision and rendered judgment dismissing the plaintiff's appeal. The court found that the plaintiff's 2006 application was an application to amend or to modify her 2004 permit and not a new application for a special use permit. The court further found that the defendant sustained its burden of proof that the conditions attached to the plaintiff's 2004 permit should not be removed because without the conditions, the special use permit was in violation of § 177-42 (A) of the ordinances.

In its memorandum of decision, the court stated that "there was certainly substantial evidence before the [defendant] at the December 4, 2006 hearing to justify [the defendant's] conclusion" that keeping twenty-two dogs is not appropriate or in harmony with a residential neighborhood. The court also found that the defendant could consider the plaintiff's failure to comply with the conditions of the 2004 permit, even though there was nothing in the ordinances that specifically permits the defendant to take her noncompliance into consideration. The court also noted that this appears to be an issue of first impression in Connecticut. This appeal followed.[5]

Before we address the plaintiff's claims, we set forth the applicable standard of review. "When ruling upon an application for a special [permit], a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The [Appellate Court and] trial court [must] decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable

---

[5] The plaintiff was granted certification by this court to appeal on September 13, 2007.

discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . . Although a zoning commission or board possesses the discretion to determine whether a proposal meets the standards established in the regulations, it lacks the discretion to deny a special permit if a proposal satisfies the regulations and statutes. . . .

"[C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . . The trial court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Where the board states its reasons on the record we look no further. . . . More specifically, the trial court must determine whether the board has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, must determine whether the court properly concluded that the board's decision to [deny the application for a special permit] was arbitrary, illegal or an abuse of discretion. . . . The evidence, however, to support any such [decision] must be substantial . . . ." (Citations omitted; internal quotation marks omitted.) *Oakbridge/Rogers Avenue Realty, LLC* v. *Planning & Zoning Board*, 78 Conn. App. 242, 246–48, 826 A.2d 1232 (2006).

The special permit, or special exception, as it is also known, is authorized by General Statutes § 8-2. "[Section] 8-2 explicitly enables the use of special exceptions. A special [exception] allows a property owner to use

his property in a manner expressly permitted by local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. . . . An application for a special permit seeks permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district. . . . When a special permit is issued, the affected property may be allowed an exception to the underlying zoning regulations, but it continues to be governed in the same manner as provided in the overall comprehensive plan. . . . [The special permit] provides a local zoning agency with some flexibility while maintaining standards applicable to all members of the municipality." (Internal quotation marks omitted.) *Smith Bros. Woodland Management, LLC* v. *Planning & Zoning Commission*, 88 Conn. App. 79, 82–84, 868 A.2d 749 (2005).

I

The first component of the plaintiff's argument is that her 2006 application was an application for a new special use permit and not an application to modify or to amend the special use permit granted to her in 2004. She argued both in her brief and during oral argument that because the ordinances do not explicitly permit an amendment to a special use permit, her 2006 application must be considered an application for a new special use permit, which essentially would allow her to start over with a blank slate.[6] The defendant claims that this

---

[6] Although the plaintiff contends that there is no provision in the ordinances that permits applications to amend to be filed, and therefore by default her 2006 application must be considered to be a new application, defense counsel pointed out at oral argument that § 177-42 (A) (8) (e) of the ordinances states: "The [defendant] shall not be entitled to further review of any special use permit subsequent to this process unless the use of the property or structures on it changes such that an amendment to the permit

argument was not presented properly to the trial court and that it would be highly prejudicial to the defendant for this court to consider the plaintiff's argument.

The following additional facts are relevant to the plaintiff's claim. On October 20, 2006, with the 2004 permit about to expire, the plaintiff filed an application for a special use permit with the defendant. The record indicates that on October 27, 2006, the plaintiff's attorney sent a letter addressed to the West Hartford town planner that read: "On October 20, 2006 I hand delivered to your office a Permit Application for a Special Use Permit for the property at 99 Walbridge Road, West Hartford, Connecticut. However, based upon a voice mail which you left me on October 25, 2006, I now realize that I should have applied for an Amendment to the Conditions of Approval of the existing Special Use Permit which was granted by the [defendant] on December 6, 2004. Therefore, by virtue of this letter, I hereby amend my Application and request that the [defendant] amend the conditions of the Approval of the existing Special Use Permit dated December 6, 2004, to remove the requirement that the number of dogs at the property be reduced to three (3) and to remove the expiration dates contained therein."

The defendant's 2006 decision provided that it was ruling on the "[a]pplication (SUP # 1026-R1-06) of [the plaintiff] . . . requesting approval to modify a previously approved Special Use Permit (SUP #1026) granted on December 6, 2004 authorizing the keeping [of] up to three dogs on the premises." Contrary to the defendant's assertion, this issue was raised at the trial court, and the court, without setting forth its analysis, found that the 2006 application was an application to amend the 2004 permit. It stated: "Based upon the application and other documents, this court finds that the

is necessary or appropriate." This subdivision appears to contemplate the possibility of an amendment to a previously granted special use permit.

subject application in 2006 is an application to amend or modify the 2004 special use permit, in particular to revoke the conditions of that permit."[7]

The plaintiff appears to put forth the argument that this is a new application for a special permit, and not an application to amend the 2004 permit, in an attempt to strengthen her argument that her noncompliance with the 2004 permit is completely unrelated to whether her 2006 application should have been granted. The plaintiff set out, in her brief to this court, as her statement of issue on appeal, "[w]hether the defendant . . . may consider perceived noncompliance . . . with a previously issued special permit in deciding whether to grant *a modification to that special permit*?" (Emphasis added.) She then proceeds to argue in her brief why her 2006 application should be considered an application for a new permit.

The defendant found, and the trial court agreed, that the application in question was an application to modify or to amend the plaintiff's previously issued permit and was not an application for a new permit. The findings of the defendant and the court will not be disturbed by this court, as "[w]e generally employ a deferential standard of review to the actions of a zoning board. . . . [C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and *fairly* made after a full hearing . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 607, 942 A.2d 511, cert. denied, 289 Conn. 901, 957 A.2d 871 (2008).

---

[7] The court stated in a footnote that even if it were to consider the 2006 application to be a new application, there was substantial evidence in the 2004 application that the proposed use was not in harmony with the residential neighborhood to justify the defendant's decision.

## II

The plaintiff next argues that the defendant denied her a fair hearing by considering factors not enumerated in the ordinances in deciding whether to grant her 2006 permit application and ultimately denying it. Specifically, the plaintiff claims that the defendant improperly considered her noncompliance with the conditions of the 2004 permit. The defendant asserts that the plaintiff failed to contest the conditions attached to the 2004 permit at the appropriate time and that she cannot now raise this issue.

As noted previously, the defendant did not approve the plaintiff's 2004 permit application outright. The plaintiff was granted the noncommercial residential scale kennel permit subject to the conditions that (1) she reduce the number of dogs on her property from twenty-two to three and (2) she accomplish this reduction within two years. The defendant specifically found at that time that the keeping of twenty-two dogs on the premises was not appropriate or compatible with the residential neighborhood and, additionally, was a violation of the ordinances.

The plaintiff unquestionably did not comply with the conditions of the 2004 permit. She admitted during the hearing before the defendant on December 4, 2006, that she had not considered moving with her dogs because "it's too emotional for the dogs and for [herself]" and that she "did not take any steps to find other homes [for the dogs], not because [she] was being arrogant, it's because everything else piled up on [her] in [her] life, [her] father becoming ill soon after this decision was made." She further testified that she could not separate the dogs because they would not adjust to being separated and that she tried to have people take the youngest dogs prior to filing her 2004 application, but the dogs would not go with anyone else. When

asked if she had reduced the number of dogs at all, her attorney stated that "she realized during that two year period that if she gave them away, they would not survive and she couldn't break them up."

The plaintiff's 2006 application in effect requested that she be able to keep all of the dogs that she currently owned until they died. This was essentially a request to have the conditions attached to the 2004 permit removed. In denying her 2006 application, the defendant reiterated that the keeping of twenty-two dogs on the premises was not appropriate or in harmony with the residential neighborhood. By seeking to amend her 2004 permit to remove the conditions that she reduce the number of dogs at her residence from twenty-two to three and that she do so within two years, the plaintiff was seeking to have the defendant grant a permit that it had already determined was in conflict with the ordinances.

Section 177-42 (A) (5) (a) of the ordinances provides that when considering an application for a special use permit, the defendant "shall make a finding that each of the following standards is met and, where necessary, shall attach specific conditions to its approval of the special use permit if, in its opinion, such conditions are essential to making the finding that . . . [t]he location and size of the use, the nature and intensity of the operations connected with it, the size of the lot in relation to it and the location of the lot with respect to streets giving access to it are such that it will be in harmony with the appropriate and orderly development of the district in which it is located." The defendant did just that by conditionally approving the plaintiff's 2004 permit application. The defendant clearly found that the only way that the plaintiff could be in compliance with the ordinances and to maintain the harmony of the neighborhood was to reduce the number of dogs on her premises to three.

"Unlike a variance which involves the varying of a zoning ordinance, a special exception . . . deals with compliance with the ordinance and imposes upon a board of zoning appeals the duty to grant an exception [or zoning permit or to approve a site plan] once the conditions specified in the ordinance have been met." (Internal quotation marks omitted.) *Grasso* v. *Zoning Board of Appeals*, 69 Conn. App. 230, 244, 794 A.2d 1016 (2002). "The [zoning] board may grant the exception [or permit] once it finds that all the requirements of the ordinance have been satisfied . . . ." (Internal quotation marks omitted.) Id., 246.

"Finality of decision is just as desirable in the case of an exception [or permit] as in one involving a variance. Because of the nature of an exception [or permit], however, the power of a zoning board to review a prior decision denying the exception [or permit] is not [as] limited . . . as it is when a variance is sought . . . . [An exception or permit may be granted] when the owner requesting an exception [or permit] files a subsequent application altering the plan under which he previously sought the exception [or permit], in order to meet the reasons for which the board denied the prior one. . . . To justify a special exception [or permit] it must appear that the manner in which the owner proposes to use his property will satisfy the conditions imposed by the regulations. If, therefore, upon a second request for a special exception [or permit], there is a substantial change in the manner of use planned by the owner, the board is faced with an application materially different from the one previously denied. It may well be that the new plan, by reason of the changes made therein, will succeed, where the former failed, in satisfying the conditions enumerated in the regulations. Under such circumstances, the board is not precluded from granting the second application merely because it has denied the first." (Citations omitted.) *Mitchell*

*Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 534, 102 A.2d 316 (1953).

The defendant would have been well within its authority to grant the plaintiff's 2006 application had it found that the circumstances that prompted it to conditionally approve her 2004 permit had changed. The defendant in fact would have had a duty to grant the plaintiff's 2006 application had it found that the plaintiff's circumstances were in compliance with the ordinances and if her 2006 application proposed a scenario that would have been appropriate or in harmony with the residential neighborhood in which she resided. On the contrary, the defendant found both in 2004 and in 2006 that the keeping of twenty-two dogs in a residence was not appropriate or in harmony with the residential neighborhood.

The defendant's decision was not based on the plaintiff's noncompliance with the conditions attached to the 2004 permit but instead on the issues created by allowing one residence to contain twenty-two dogs. The record shows that the defendant was concerned with maintaining the harmony of the residential neighborhood, and the court properly concluded that the defendant's decision was based on substantial evidence.

In addition, this court has held that a party cannot challenge a condition imposed on a special permit after the period of compliance with the condition has expired. *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission,* 13 Conn. App. 159, 163, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988). In *Spectrum of Connecticut, Inc.,* the plaintiff had been granted a one year special permit to operate a game room with the condition that it control loitering and other nuisance occurrences from the public that could disrupt the quiet enjoyment of area residents. Id., 160–61. When the plaintiff applied for renewal of its special

permit, the commission denied its application on the basis of testimony presented about the noise, littering, vandalism, loitering and drug use by patrons of the plaintiff's establishment. Id., 161.

The Superior Court sustained the plaintiff's appeal, but this court held that because the plaintiff did not contest the conditions attached to the initial permit, it could not contest the validity of the conditions when the commission investigated its noncompliance with the conditions when considering its application to renew the permit. Id., 162 ("[A] party may not challenge on appeal the validity of a preexisting condition to a special permit which it seeks to renew. Having failed to challenge it when it was imposed, [the plaintiff] was in no position to contest the validity of the condition when the commission evaluated [the plaintiff's] renewal application by looking to its noncompliance with the condition."). This court stated: "[W]e note that if we held otherwise, and allowed an applicant to challenge the validity of a special permit condition which was not questioned until after the applicant's noncompliance, a special permit applicant would have it both ways, making the system of land use regulation contemplated by General Statutes § 8-2 impractical and unworkable." Id., 163.

Here, the plaintiff failed to challenge the conditions attached to the 2004 permit when they were imposed and instead enjoyed the benefit of the permit and its two year grace period while making no attempt to actually comply with the conditions of the permit. The plaintiff's untimely collateral attack on the conditions of the 2004 permit is not allowable. See *Gay* v. *Zoning Board of Appeals*, 59 Conn. App. 380, 387, 757 A.2d 61 (2000) ("a property owner [can] not accept the benefits of a permit and a condition attached to it for three years and then attack the condition"); see also *Upjohn Co.* v. *Zoning*

*Board of Appeals*, 224 Conn. 96, 100–102, 616 A.2d 793 (1992).

The defendant also argues that if it had granted the plaintiff's application for an amended permit in 2006, it would essentially have been reversing itself, which generally is prohibited unless there has been a change in circumstances that materially affects the subject of the application. See *Consiglio* v. *Board of Zoning Appeals*, 153 Conn. 433, 438, 217 A.2d 64 (1966); *Grasso* v. *Zoning Board of Appeals*, supra, 69 Conn. App. 244. Such changes have included, for an asphalt plant, redesign of entrance and exit ways and safeguards to prevent unloaded sand and gravel from causing dust; *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, supra, 140 Conn. 535; and for an application to allow a sanitary landfill disposal area, relocating the access road farther away from the nearest dwelling and eliminating acreage of the disposal area that was most observable from the neighboring property. *Rocchi* v. *Zoning Board of Appeals*, 157 Conn. 106, 111–12, 248 A.2d 922 (1968). Such a change in conditions can permit a zoning commission to grant an exception or special use permit after an initial denial once it finds that all of the requirements of the ordinances have been satisfied and that the applicant is willing to comply with the conditions imposed by the commission. See id. There has been no such change in conditions here. The defendant made no finding, nor does the record reveal any basis on which to make one, that the plaintiff was willing to comply with the conditions of the 2004 permit.

The judgment is affirmed.

In this opinion the other judges concurred.