INTERNATIONAL INVESTORS *v.* TOWN PLAN
AND ZONING COMMISSION OF THE
TOWN OF FAIRFIELD ET AL.
(SC 20579)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff appealed to the trial court from the decision of the defendant
plan and zoning commission, which granted extensions of the approvals
of a special permit and coastal site plan review to the defendant F Co.

International Investors *v.* Town Plan & Zoning Commission

in connection with F Co.'s proposed construction of a retail building on its property, which abuts the plaintiff's property. The commission had approved F Co.'s application for a special permit and site plan review in 2006, and the special permit became effective in April, 2009. Under the applicable zoning regulations in effect in April, 2009, approval of special permits was conditioned on the completion of the proposed use within two years of the date of approval, subject to up to five years of extensions, and failure to complete the proposed use by the deadline would void the approval. The statute (§ 8-3 (i)) governing F Co.'s site plan in April, 2009, required work to be completed within five years of the approval of the site plan, subject to up to ten years of extensions, and failure to complete the proposed work by the deadline would result in the automatic expiration of the approval of the site plan. In February, 2011, the commission repealed the zoning regulation that prescribed the two year time limit for completing the proposed use authorized by a special permit and amended another regulation to require the commission to "proceed in accordance with the requirements of the . . . General Statutes" for applications that require a public hearing, including special permit applications. F Co. thereafter obtained confirmation from the commission that, pursuant to the 2011 amendment to the zoning regulations and § 8-3 (i), its special permit and site plan approvals would expire in April, 2014. In May, 2011, the legislature amended § 8-3 (m) to extend the time limitation for which site plans remain valid to nine years, which extended the deadline for the completion of work under F Co.'s site plan to April, 2018. In March, 2018, F Co.'s property remained undeveloped, and the commission granted F Co.'s request for a five year extension, to April, 2023, to complete work in connection with F Co.'s site plan and special permit. The trial court sustained the plaintiff's appeal from that extension insofar as the plaintiff challenged the commission's authority to extend the expiration date of the special permit to April, 2023. The trial court further concluded, however, that its decision to uphold the plaintiff's challenge to the extension of the expiration date of the special permit approval did not operate to invalidate the special permit because special permits attach to the property and run with the land and, therefore, could not be temporally limited. Accordingly, the trial court declined to conclude that the permit had expired or was otherwise invalid. The plaintiff then appealed to the Appellate Court, which concluded that the trial court had incorrectly determined that the special permit was valid indefinitely and could not be subject to a temporal limitation. The Appellate Court further concluded that, once the special permit became effective in April, 2009, F Co. had two years, subject to any granting of extensions, to complete its development of the property and that, because F Co. failed to complete its development of the property or to request any extensions within that two year period, F Co.'s special permit expired in April, 2011. The Appellate Court thus reversed the trial court's judgment in part and remanded the case with direction to render judgment

International Investors *v.* Town Plan & Zoning Commission

sustaining the plaintiff's appeal as to the plaintiff's claim that the special permit had expired in April, 2011. On the granting of certification, F Co. appealed to this court, claiming that the Appellate Court had incorrectly concluded that the commission was authorized by statute (§ 8-2 (a)) to condition the approval of a special permit on the completion of development within a specified time period and that the special permit issued to F Co. expired in April, 2011, two years after its April, 2009 effective date, because construction had not been completed by that deadline. *Held* that the Appellate Court incorrectly concluded that F Co.'s special permit expired in April, 2011, and, accordingly, this court reversed the Appellate Court's judgment, remanded the case, and directed that the trial court deny the plaintiff's appeal: a zoning agency has the authority under § 8-2 (a) to adopt a regulation pursuant to which a special permit will expire if construction is not completed within a specified period of time, but, if a zoning agency exercises such authority, the time limitation imposed cannot conflict with the time limitation prescribed in § 8-3 (i) and (m); moreover, in light of the statutory amendments to § 8-3 extending the time limits for site plans, the statutory period governing the completion of development in connection with F Co.'s site plan had not yet expired when F Co. requested an extension of time in 2018, and, therefore, F Co.'s special permit could not have expired on the basis of its failure to complete its work within that time; accordingly, the commission properly granted F Co.'s request for an extension of time from April, 2018, to April, 2023.

Argued December 13, 2021—officially released July 19, 2022

*Procedural History*

Appeal from the decision of the named defendant extending its approvals of a special permit and a coastal site plan review granted to the defendant Fairfield Commons, LLC, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Radcliffe, J.*; judgment sustaining the appeal in part, from which the plaintiff, on the granting of certification, appealed to the Appellate Court, *Prescott*, *Elgo* and *Moll, Js.*, which reversed in part the trial court's judgment and remanded the case to that court with direction to render judgment sustaining the plaintiff's appeal with respect to its claim that the special permit approval granted to the defendant Fairfield Commons, LLC, expired, and the defendant Fairfield Commons, LLC, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

International Investors *v.* Town Plan & Zoning Commission

*Timothy S. Hollister*, with whom were *Andrea L. Gomes* and *John F. Fallon*, for the appellant (defendant Fairfield Commons, LLC).

*Charles J. Willinger, Jr.*, with whom, on the brief, were *Ann Marie Willinger* and *James A. Lenes*, for the appellee (plaintiff).

*Pascal F. Naples*, *Joseph P. Williams* and *Joette Katz* filed a brief for the National Association of Home Builders as amicus curiae.

*John P. Casey* and *Evan J. Seeman* filed a brief for the Connecticut Association of Realtors, Inc., as amicus curiae.

*Amy E. Souchuns* filed a brief for the Home Builders & Remodelers Association of Connecticut, Inc., as amicus curiae.

*Opinion*

D'AURIA, J. This certified appeal concerns whether a local zoning authority may, by regulation, condition the continuing validity of a special permit[1] on completing development in connection with the permitted use within a specified period of time. The defendant Fairfield Commons, LLC, appeals from the judgment of the Appellate Court, which (1) affirmed the trial court's judgment insofar as the trial court concluded that the named defendant, the Town Plan and Zoning Commission of the Town of Fairfield (commission), improperly granted Fairfield Commons' request for an extension of its special permit deadline to complete development, and (2) reversed the judgment insofar as the trial court concluded that the special permit could not be subject to a temporal limitation as a matter of law. See *International Investors* v. *Town Plan & Zoning Commission,*

---

[1] General Statutes § 8-2 (a) provides in relevant part that zoning regulations "may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit . . . ."

International Investors *v.* Town Plan & Zoning Commission

202 Conn. App. 582, 606–607, 246 A.3d 493 (2021). With regard to the latter determination, the Appellate Court concluded that the commission had authority to adopt a regulation prescribing a temporal condition for special permits; see id., 599; and that a temporal condition does not violate the tenet that special permits run with the land. See id., 606. We agree with those conclusions subject to an important—and, in this case, determinative—limitation that the Appellate Court did not recognize: such a special permit regulation may not prescribe a shorter time limitation for completing development than the statutory period prescribed for completion of development in connection with an accompanying site plan under General Statutes § 8-3 (i) and (m). Because the statutory period governing completion of development in connection with Fairfield Commons' coastal area management site plan (site plan)[2] had not expired, Fairfield Commons' special permit could not have expired for failure to satisfy that condition by force of a municipal regulation. We therefore reverse the Appellate Court's judgment.

The record reflects the following undisputed facts, either reflected in the trial court's memorandum of decision or otherwise reflected in the record. Fairfield Commons is the owner of a 3.6 acre undeveloped parcel of land located in a design commercial district in the town of Fairfield. Sometime before April 11, 2006, Fairfield Commons applied to the commission for a special permit and site plan review for the purpose of constructing a 36,000 square foot retail building, as required by Fairfield zoning regulations. On April 11, 2006, the commis-

---

[2] The plaintiff has suggested in its brief to this court that a coastal area management site plan is not a site plan, as that term is used in § 8-3. At oral argument before this court, Fairfield Commons asserted that the former serves the same function as the latter but is subject to additional requirements. The plaintiff effectively conceded this point in its reply brief to the trial court, and we therefore treat Fairfield Commons' coastal management site plan as a site plan subject to § 8-3, as did the trial court.

International Investors *v.* Town Plan & Zoning Commission

sion voted to approve the special permit, subject to several conditions, as well as the accompanying site plan. The approval did not actually take effect until April 8, 2009, however, when an appeal from that decision, unrelated to the present matter, was resolved. See Fairfield Zoning Regs., § 2.23.6 (a) (2009).

At the time the approval took effect in April, 2009, the Fairfield zoning regulation governing special permits conditioned approval on "completion of the proposed use" within two years from the date of approval. Id., § 2.23.5. The regulations provided that the commission may grant extensions of time to complete work, up to five years from the date of approval. Id., § 2.23.6 (a). Failure to complete the proposed use within the specified period would render the approval "null and void . . . ." Id.

The statute governing Fairfield Commons' site plan provides that "all work in connection with [the] site plan shall be completed within five years after the approval of the plan." General Statutes § 8-3 (i). "Work" is defined to mean "all physical improvements required by the approved plan."[3] General Statutes § 8-3 (i). The statute permits the local zoning authority to grant one or more extensions of time to complete the work, provided that the total of the extension(s) did not exceed ten years from the date of the site plan approval. General Statutes § 8-3 (i). The statute further provides that "[f]ailure to complete all work within [the specified] period shall result in automatic expiration of the approval of such site plan . . . ." General Statutes § 8-3 (i).

___

[3] Although "all physical improvements" reflected in the site plan (the statutory term) and those matters necessary for "completion of the proposed [special permit] use" (the regulatory term) may not be entirely coextensive, the parties in the present case have not argued that these terms are materially different in scope as these terms bear on the issues before us. We therefore treat the conditions as effectively governing the same matter.

Thus, under the statutes and regulations initially governing Fairfield Commons' development plans, its special permit would be rendered void if the proposed development was not completed by April, 2011, in the absence of a grant of an extension of time. Fairfield Commons' site plan would automatically expire if all work was not completed by April, 2014, unless the commission granted an extension of time.

In February, 2011, the commission amended its zoning regulations. As relevant to the present case, the commission repealed the regulation prescribing the time limit for completing the use authorized by a special permit. It simultaneously amended another regulation to provide that, for applications that require a public hearing (as do special permits under General Statutes § 8-3c (b)), "the [c]ommission shall proceed in accordance with the requirements of the . . . General Statutes." Fairfield Zoning Regs., § 2.23 (2011). Shortly thereafter, Fairfield Commons requested and obtained written confirmation from the commission that the expiration date of both its special permit and site plan was April 8, 2014.

Due to an economic downturn that had stalled development across the state, in May, 2011, the legislature amended statutes governing land use permits and approvals to extend the time limitations to complete development. See Public Acts 2011, No. 11-5 (P.A. 11-5). Site plans that had not yet expired, like that of Fairfield Commons, were provided a nine year period from the plan's approval date to complete the work, with authority for the local zoning agency to grant extensions of time not to exceed fourteen years from the date of approval. P.A. 11-5, § 1, codified at General Statutes (Supp. 2012) § 8-3 (m). This change extended the time limitation in Fairfield Commons' site plan until April, 2018, by operation of law.

International Investors *v.* Town Plan & Zoning Commission

In March, 2018, the parcel at issue remained undeveloped.[4] Fairfield Commons therefore requested from the commission a five year extension of the time limit to complete work in connection with its site plan and its special permit—from April 8, 2018, to April 8, 2023. At the hearing on the request, James R. Wendt, the town planning director, explained the intention and effect of the 2011 amendment to the zoning regulations, namely, to ensure that the commission's regulatory time limits would conform to statutory time limits as they may change, and stated that it applied retroactively to Fairfield Commons' unexpired special permit and site plan approvals. Commission members expressed agreement with this view and voted to grant Fairfield Commons' extension request.

The plaintiff, an owner of property abutting the parcel at issue, appealed to the Superior Court from the commission's decision granting the extension. See General Statutes § 8-8 (a) (1) and (b) (designating abutting property owner as aggrieved person for purposes of right to appeal). The trial court first addressed the plaintiff's challenge to the commission's authority to extend the time limitation attached to the special permit. The court concluded that the 2011 amendment to the town's zoning regulation providing that the commission would proceed "in accordance with the requirements of the . . . General Statutes"; Fairfield Zoning Regs., § 2.23 (2011); was irrelevant because no statute addressed time limits applicable to special permits. It rejected Fairfield Commons' position, jointly adopted by the commission, that the time limitations for completing work in connection with a "site plan" established by § 8-3 (i) and (m) encompass both the special permit and the site plan because they must be viewed as a

—————

[4] In 2017, the commission approved a change in use for the subject parcel from a retail building to a medical office. The parties do not argue that this change is material to any issue on appeal.

International Investors *v.* Town Plan & Zoning Commission

single, integrated application and approval. The court reasoned that the two matters have materially distinguishing characteristics and functions. The court therefore sustained the plaintiff's appeal insofar as it challenged the commission's authority to extend the special permit approval in 2018.

The court then considered whether it was legally permissible for the special permit to be subject to a time limitation in the first instance. Relying on the view contained in Attorney Robert A. Fuller's treatise on Connecticut land use law, the court concluded that a duly recorded special permit; see General Statutes § 8-3d; runs with the land and, as such, is valid indefinitely in the absence of statutory authority allowing revocation or expiration of special permits. See R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 50:1, pp. 161–62.[5] The trial court therefore concluded that the commission's 2018 decision had no impact on the validity of Fairfield Commons' special permit, assuming it was otherwise valid. Accordingly, the court sustained the plaintiff's appeal "to the extent that it challenge[d] the authority of the [commission] to extend the expiration date of the special permit until April 8, 2023," but declined to conclude that the permit had expired or was otherwise invalid.

The plaintiff appealed to the Appellate Court, which reversed the trial court's judgment in part.[6] See *Interna-*

---

[5] The treatise provides in relevant part that, "[w]hen a special permit is issued by the zoning commission . . . it remains valid indefinitely since the use allowed under it is a permitted use subject to conditions in the zoning regulations. . . . The agency cannot put an expiration date on and require renewal of special permits . . . because that automatically would turn a permitted use into an illegal use after the time period expired. . . . If the conditions of the special permit are violated, the remedy is a zoning enforcement proceeding since there is no statutory provision allowing revocation or expiration of special permits." (Footnotes omitted.) 9B R. Fuller, supra, § 50:1, pp. 162–63.

[6] The commission declined to file an appellate brief and instead notified the Appellate Court that it was adopting Fairfield Commons' brief. The commission filed a similar notice with this court.

International Investors *v.* Town Plan & Zoning Commission

*tional Investors* v. *Town Plan & Zoning Commission*, supra, 202 Conn. App. 606–607. The Appellate Court concluded that the commission had statutory authority to impose a time limitation as a condition of the continuing validity of a special permit under General Statutes § 8-2 (a), which authorizes special permit "conditions necessary to protect the public health, safety, convenience and property values . . . ." See *International Investors* v. *Town Plan & Zoning Commission*, supra, 594–99. The Appellate Court reasoned that a temporal limitation on completing the development connected to the specially permitted use advances these interests by preventing the permit holder from unduly delaying the commencement of the permitted use to a time when the surrounding circumstances may no longer support it. See id., 596–97. It dismissed Fairfield Commons' contention that the statutorily prescribed time limitation on the completion of development for the site plan under § 8-3 (i) and (m) would provide an opportunity to address these concerns, noting the ministerial nature of that approval process. See id., 597 n.18.

The Appellate Court further concluded that the trial court had incorrectly interpreted the tenet that special permits run with the land to compel the conclusion that special permits, once duly recorded, cannot be temporally restricted. See id., 600. The Appellate Court examined the case law cited by the trial court and Fuller's treatise and concluded that these cases did not support their position. See id., 601–602. Rather, those cases stood for an entirely distinct proposition, namely, that special permits "are not personal to the applicant and remain valid notwithstanding a change in the ownership of the land." (Emphasis omitted.) Id., 601.

The Appellate Court then connected this error in the trial court's analysis to the ultimate issue of whether Fairfield Commons' special permit had, in fact, expired: "[T]he [trial] court incorrectly determined that the spe-

cial permit granted to Fairfield Commons, once recorded, was valid indefinitely and could not be subject to a temporal condition, such as a condition requiring the completion of development attendant to the permitted use by a date certain. Thus, the court committed error in concluding that the special permit had not expired. Once the special permit became effective in 2009, Fairfield Commons had two years, subject to any additional extensions granted, to complete development on the property. Fairfield Commons failed to complete development or request any extensions of the special permit approval within that time frame, and, therefore, the special permit expired in 2011. We leave undisturbed the [trial] court's conclusion that the commission's decision extending the special permit was improper.'' Id., 606–607. The Appellate Court accordingly reversed the trial court's judgment in part and remanded the case with direction to sustain the plaintiff's appeal as to its claim that Fairfield Commons' special permit had expired. See id., 607. It affirmed the judgment in all other respects. See id.

We granted Fairfield Commons' petition for certification to appeal with respect to the issues of whether the Appellate Court correctly concluded (1) that § 8-2 (a) provides authority for a municipal zoning commission to condition approval of a property owner's special permit on the completion of development within a specified time period, subject to extensions, and (2) that the special permit approval issued to Fairfield Commons to construct a retail building expired in 2011, two years after the effective date, because construction had not been completed, and, therefore, the extension of the special permit and site plan the commission granted in 2018, under § 8-3 (m), was invalid. See *International Investors* v. *Town Plan & Zoning Commission*, 336 Conn. 928, 247 A.3d 577 (2021).

International Investors *v.* Town Plan & Zoning Commission

Not long after this court granted Fairfield Commons' petition, the state enacted legislation relevant to the issue in this appeal. See Public Acts 2021, No. 21-34 (P.A. 21-34); Public Acts 2021, No. 21-163 (P.A. 21-163). In response to executive orders issued by Governor Ned Lamont to mitigate the economic impact of the COVID-19 pandemic, the 2021 public acts extended expiration dates for completing work in land use approvals that had not expired prior to the July, 12, 2021 effective date of P.A. 21-163.[7] The 2021 public acts not only extended deadlines previously imposed by statute, such as the one for site plans, but also added a new provision extending deadlines imposed as a condition of special permit approval. Section 8-3 (m), as amended by P.A. 21-34, § 3, and P.A. 21-163, § 1, provides in relevant part: "[A]ny site plan approval made under this section prior to July 1, 2011, that has not expired prior to July 12, 2021 . . . shall expire not less than fourteen years after the date of such approval and the commission may grant one or more extensions of time to complete all or part of the work in connection with such site plan, provided no approval, including all extensions, shall be valid for more than nineteen years from the date the site plan was approved." General Statutes (Supp. 2022) § 8-3 (m) (1). Section 8-3c, as amended by P.A. 21-163, § 5, provides in relevant part: "[A]ny special permit or special exception approval made under this section prior to July 1, 2011, that has

_____

[7] See Executive Order No. 7JJ, § 3 (May 6, 2020), available at https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7JJ.pdf (last visited July 13, 2022) ("Tolling of Land Use and Building Permits. In order to ensure that land use and building permit holders may continue to diligently pursue permitted activities after the state of emergency, an approval or permit issued by a municipal land use agency or official pursuant to the 'Covered Laws' as defined in Section 19 of Executive Order 7I, or by a municipal building official pursuant to Connecticut General Statutes Chapter 541 and valid as of March 10, 2020, shall not lapse or otherwise expire during the state of emergency, and the expiration date of the approval shall toll during the state of emergency.").

International Investors *v.* Town Plan & Zoning Commission

not expired prior to July 12, 2021, and that specified a deadline by which all work in connection with such approval is required to be completed, shall expire not less than nineteen years after the date of such approval and the commission may grant one or more extensions of time to complete all or part of the work in connection with such special permit or special exception.''[8] General Statutes (Supp. 2022) § 8-3 (c) (1).

In its appeal to this court, Fairfield Commons, joined by the commission,[9] makes two overarching legal arguments. First, they claim that the Appellate Court failed to recognize that site plan expiration dates for completion of construction, as dictated by § 8-3 (i) and (m), control the duration of a special permit because the permit and site plan are inextricably linked and cannot be subject to different time limits.[10] Second, they reiterate the trial court's view that special permits run with the land and cannot be subject to time limitations in the absence of statutory authority to impose such limitations. The defendants contend that the Appellate Court incorrectly found authority in § 8-2 (a) that sets up a conflict with § 8-3 (i) and (m). The defendants characterize the 2021 public acts as an endorsement of their

---

[8] "The terms 'special exception' and 'special permit' are synonymous and have been used interchangeably." *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 623 n.4, 711 A.2d 675 (1998); see also 2 P. Salkin, American Law of Zoning (5th Ed. 2011) § 14:1, p. 14-5 (noting general view that special permit, special exception, and conditional use permit are synonymous terms).

[9] We hereafter refer to Fairfield Commons and the commission collectively as the defendants.

[10] The plaintiff contends that this claim is unpreserved for appellate review because the defendants did not raise this issue in the Appellate Court. Although the plaintiff is technically correct, review of the submissions in the proceedings below reveals that § 8-3 (i) and (m) has been an integral part of the defendants' position from the outset of this litigation. The question of the commission's authority to impose a time limitation on special permits, which is properly before us, requires consideration of the time limitation in the site plan statute, § 8-3, especially in light of P.A. 21-163. We therefore conclude that the defendants properly may advance this argument.

International Investors *v.* Town Plan & Zoning Commission

position, namely, that "special permits should endure on a long-term, uniform, statewide basis, for a time period consistent with the site plan statutes and other collateral permits." In addition to these legal arguments, they claim that the Appellate Court made an erroneous "finding" that the special permit expired in 2011, due to the absence of any request by Fairfield Commons for an extension of time.

Conversely, the plaintiff agrees in full with the Appellate Court's reasoning. With regard to the import of the 2021 public acts, the plaintiff views Fairfield Commons' special permit as falling outside of the operative dates therein but contends that the public acts undermine every argument the defendants advance.

We agree with the Appellate Court insofar as it concluded that a temporal limitation on a special permit does not violate the tenet that special permits run with the land and falls within the authority granted under § 8-2 (a), but we conclude that the Appellate Court incorrectly failed to consider the effect of § 8-3 on the exercise of that authority. We hold that the commission lacked authority to condition the continuing validity of the special permit on completion of development within a specified period that conflicted with the period prescribed for satisfying the same condition in the statute governing the site plan.

Except insofar as the defendants challenge a purported "finding" by the Appellate Court, an issue that we need not reach, all of the issues before us are questions of law. We therefore exercise plenary review and apply well established rules of statutory construction. See, e.g., General Statutes § 1-2z ("[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes"); *Kuchta* v. *Arisian*, 329 Conn. 530, 534–35, 187 A.3d 408 (2018) ("[w]hen a statute is not plain and

International Investors *v.* Town Plan & Zoning Commission

unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter'' (internal quotation marks omitted)). Statutory text does not unambiguously resolve the issues before us—the parties do not contend otherwise—and we therefore consult extratextual sources to the extent that they are illuminating.

I

We begin with general land use principles and their relationship to the concept of land use permits running with the land. A special permit ''authorizes those uses that are explicitly permitted in the [zoning] regulations (albeit subject to certain conditions not applicable to other uses in the district).'' (Emphasis omitted; internal quotation marks omitted.) *Grasso* v. *Zoning Board of Appeals*, 69 Conn. App. 230, 243, 794 A.2d 1016 (2002); see *Rhine* v. *Bizzell*, 311 Wis. 2d 1, 16, 751 N.W.2d 780 (2008) (special permits are required ''for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner''). ''The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in [a] particular zoning [district], their nature is such that their precise location and mode of operation must be [individually] regulated because of the [particular] topography, traffic problems, neighboring uses, etc., of the site. . . . T. Tondro, [Connecticut Land Use Regulation (2d Ed. 1992) p. 175]. *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 612–13, 610 A.2d 1205 (1992).'' (Internal quotation marks omitted.) *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, 253 Conn. 183, 191–92, 757 A.2d 1052

International Investors *v.* Town Plan & Zoning Commission

(2000). "The proposed use, [therefore], must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values." (Internal quotation marks omitted.) *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 215–16, 779 A.2d 750 (2001); see also *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 627, 711 A.2d 675 (1998) ("general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit").

A special permit, like a variance, must be recorded in the land records to be effective.[11] General Statutes § 8-3d. "[I]f the zoning regulations change before the copy [is] recorded, the property owner may lose the benefit of the variance or special permit."[12] 9 R. Fuller,

[11] A variance permits the owner to use the property in a manner forbidden by the zoning regulations, upon a showing of hardship, whereas a special permit authorizes a use that is explicitly permitted in the regulations without any such evidence. See, e.g., *Grasso* v. *Zoning Board of Appeals*, supra, 69 Conn. App. 243. Variances do, however, have certain features in common with special permits: a variance also may be subject to reasonable conditions; see, e.g., *Vaszauskas* v. *Zoning Board of Appeals*, 215 Conn. 58, 64, 574 A.2d 212 (1990); and, as we explain in part I of this opinion, runs with the land. We rely on authority addressing variances solely to illustrate that this common feature of running with the land does not equate, as a matter of law, to indefinite duration. We have no occasion to express an opinion as to whether those features that distinguish a variance from a special permit would preclude a local zoning authority from imposing an expiration date on a variance or a time limitation on satisfaction of a variance condition.

[12] Although the legislative history of § 8-3d makes clear that recording serves two purposes—effectuating the permit and providing notice of a conditional privilege—one of the sponsors of the legislation explained that recording was not intended to guarantee the validity of the permit and that a title searcher would need to investigate whether permit requirements had been met. See 18 H.R. Proc., Pt. 9, 1975 Sess., pp. 4104–4105, remarks of Representative Richard C. Willard. Noncompliance with permit conditions may result in revocation of the permit. See 2 P. Salkin, American Law of Zoning (5th Ed. 2011) § 14:34, p. 14-160.

A Massachusetts statute illustrates that the recording of a special permit does not necessarily render the permit of infinite duration by providing both that a special permit must be recorded to take effect and that a special

International Investors *v.* Town Plan & Zoning Commission

supra, § 24:7, p. 777. Although the recording provides notice of the conditional privilege to successors in interest (as well as other interested parties); see 18 S. Proc., Pt. 4, 1975 Sess., p. 1846, remarks of Representative Louis Ciccarello; 18 H.R. Proc., Pt. 9, 1975 Sess., pp. 4088–89, remarks of Representative Richard C. Willard; 18 H.R. Proc., Pt. 9, 1975 Sess., p. 4103, remarks of Representative Richard O. Belden; it is not the act of recording that determines that the special permit runs with the land. That consequence flows from the nature of the permit and more fundamentally the nature of zoning law itself.

"[T]he identity of a particular user of the land is irrelevant to zoning." (Internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996). "Since land use regulation is concerned with the use of the land and not its ownership, a change in ownership of land for which vested rights exist . . . does not affect the right to continue the same use or use the same approvals and permits, and the new owner stands in the same position as the prior owner. . . . A special permit . . . run[s] with the land, so a transferee can complete any conditions imposed on the prior approval and then use the land as allowed by the special permit." (Footnotes omitted.) 9B R. Fuller, supra, § 53:8, pp. 280–81; see *TWK, LLC* v. *Zoning Board of Appeals*, Docket No. CV-97-400324-S, 1999 WL 30815, *4 (Conn. Super. January 8, 1999) ("Like a variance, a special permit . . . is a legal status granted to a certain parcel of realty without regard to ownership. . . . A successor in interest to such realty succeeds to the benefits and to the conditions of a land use permit to which the realty is subject." (Internal

permit shall lapse if a "substantial use" has not commenced within a certain period of years after the permit was granted. Mass. Gen. Laws Ann. c. 40A, § 9 (LexisNexis 2018); see also *McDermott* v. *Board of Appeals*, 59 Mass. App. 457, 457–58, 796 N.E.2d 455 (2003).

International Investors *v.* Town Plan & Zoning Commission

quotation marks omitted.)); 3 E. Ziegler, Rathkopf's The Law of Zoning and Planning § 61:50 (4th Ed. 2011) p. 61-136 ("The [special] permit is not, and cannot be, personal to the applicant, but runs with the land. A transferee of the land succeeds to any benefits that the original grantee of the permit enjoyed, as well as being subject to its conditions." (Footnote omitted.)).

Because ownership is irrelevant to the status of a special permit, time limitations on the permit that are tied to the lifetime of the original grantee or to the original grantee retaining title to the property are invalid. See 2 P. Salkin, American Law of Zoning (5th Ed. 2011) § 14:32, p. 14-151 ("a special permit may not be conditioned to terminate when the title to the land is conveyed to one other than the applicant"); see, e.g., *Gozzo* v. *Zoning Commission*, Superior Court, judicial district of New Britain, Docket No. CV-07-4015865-S (July 24, 2008) (46 Conn. L. Rptr. 110, 113–14); *Beeman* v. *Planning & Zoning Commission,* Superior Court, judicial district of New Haven, Docket No. CV-99-0427275 (April 27, 2000) (27 Conn. L. Rptr. 77, 79–80). That this prohibition is the *sole* defining feature of running with the land is plainly reflected in the variance statute codifying this common-law rule: "Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance."[13] General Statutes § 8-

[13] Long before enactment of this provision in 1993, this court had acknowledged that variances run with the land, although we did not employ that specific phrase. See, e.g., *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972) ("By its very definition, a variance is granted with respect to a particular piece of property; it can be enjoyed not only by the present owner but by all subsequent owners. . . . It follows then that a variance is not a personal exemption from the enforcement of zoning

International Investors *v.* Town Plan & Zoning Commission

6 (b); see 36 S. Proc., Pt. 5, 1993 Sess., pp. 1507–1508, remarks of Senator George Jepsen (explaining ban on personal conditions); 36 H.R. Proc., Pt. 31, 1993 Sess., pp. 11,106–107, remarks of Representative Jefferson B. Davis (same).

Nothing, however, in the codification of this tenet or our appellate case law addressing it suggests that this tenet would render a temporal condition unrelated to ownership invalid per se.[14] Cf. *Appeal of Barefoot*, 437 Pa. 323, 325, 263 A.2d 321 (1970) (“[w]hen a special [permit] is granted, the use becomes a conforming use, and such use [i]nures to the benefit of a subsequent owner of the land and is not abandoned *in the absence of a time limitation in the* [*permit*] *itself or in the zoning ordinance*” [emphasis added]); 2 P. Salkin, supra, § 13-40, pp. 13-110 through 13-111 (“A variance

regulations. It is a legal status granted to a certain parcel of realty without regard to ownership.” (Citation omitted.)); see also *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 859–60 (“the legislature was well aware that this court has consistently stated that a variance must run with the land and not with the individual property owner”). We do not draw any particular significance from the absence of a similar statute applicable to special permits. At the time the legislature adopted § 8-6 (b), only a trial court decision had extended this tenet to special permits. See *Bosley* v. *Zoning Board of Appeals*, Docket No. 0290506, 1990 WL 276387, *4 (Conn. Super. September 17, 1990). Although this view has since been reiterated in many trial court cases, no appellate decision has discussed this tenet as applied to special permits until the present case.

[14] We observe that our trial courts have long been in agreement that the previously discussed land use principles compel the conclusion that site plans, subdivision plans, and wetlands permits—all of which are subject to statutory time limitations; see General Statutes §§ 8-3 (i) and (m), 8-26c and 22a-42a; also run with the land. See, e.g., *Madore* v. *Zoning Board of Appeals*, Superior Court, judicial district of Middlesex, Docket No. CV-11-6005648-S (August 21, 2012) (54 Conn. L. Rptr. 519, 523); *N & L Associates* v. *Planning & Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-04-0093492 (June 8, 2005) (39 Conn. L. Rptr. 466, 468); *Brentwood Extension, LLC* v. *Planning & Zoning Commission*, Docket No. CV-98-0354488, 2004 WL 203153, *10 (Conn. Super. January 20, 2004); *Griswold Hills of Newington Ltd. Partnership* v. *Town Plan & Zoning Commission*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-95-0705701 S (June 9, 1995) (14 Conn. L. Rptr. 405, 407).

International Investors *v.* Town Plan & Zoning Commission

runs with the land; *absent a specific time limitation*, it continues until properly revoked. . . . A variance . . . may be conditioned to expire within a certain time, so that it does not continue to subsequent owners.'' (Emphasis added; footnotes omitted.)).[15]

Temporal limitations on special permits have been deemed proper if they relate to the *use* of the property. See 2 P. Salkin, supra, § 14:31, p. 14-147 (special permit conditions ''must relate directly to, and be incidental

[15] In his treatise, Fuller expresses the concern that ''put[ting] an expiration date on and requir[ing] renewal of special permits . . . automatically would turn a permitted use into an illegal use after the time period expired.'' 9B R. Fuller, supra, § 50:1, pp. 162–63. This concern appears to relate to durational limits unconnected to permit conditions (e.g., a one year permit) because the permit holder could use the permit in conformity with zoning requirements and permit conditions and, yet, the permit would expire by a set date. If a permit holder violates a permit condition requiring performance within a specified time, however, the permit holder would not be in compliance with the law. See T. Tondro, supra, p. 522.

Another Connecticut land use treatise expresses support for special permit durational limits when renewal is available. See id., p. 461 (''The reasons for limiting the duration of a special permit are to provide an effective means of enforcing a condition, and to give the commission an opportunity to review the activity after a period of time to determine whether circumstances have changed sufficiently to warrant a changed decision. Therefore, a renewal application could properly consider afresh whether the use belongs at the site, but only to the extent that new developments have occurred— in effect, a change or mistake rule should be applied in order to protect the permittee from abuses of discretion, yet give a commission the opportunity to balance the owner's interest (including the investment already made based on the initial permit) with the commission's responsibility for ensuring a balanced land use plan for the community.''); see also *Dil-Hill Realty Corp.* v. *Schultz*, 53 App. Div. 2d 263, 267, 385 N.Y.S.2d 324 (1976) (''The purpose for imposing a time limitation in the grant of a special permit or variance, it would seem, is to [e]nsure that in the event conditions have changed at the expiration of the period prescribed the board will have the opportunity to reappraise the proposal by the applicant in the light of the then existing facts and circumstances if the latter still desires to proceed. However, such a time limitation imposed for its own sake unrelated to the purposes of zoning has no apparent rationale and its strict application as the sole basis for a denial of an extension effects an unreasonable restriction [on] the permission previously found to be warranted.'' (Internal quotation marks omitted.)).

International Investors *v.* Town Plan & Zoning Commission

to, the proposed use of the real property and not to the manner of the operation of the enterprise conducted on the premises which are subject to the special permit'' (internal quotation marks omitted)); id., § 14:33, pp. 14-158 through 14-159 ("[a] time limitation [in a special permit] will be disapproved if it is unrelated to the use of the land''); see also, e.g., *Gozzo* v. *Zoning Commission*, supra, 46 Conn. L. Rptr. 110, 113 (The court distinguished time limitations in a special permit for gravel excavation and a special permit for a furniture restoration business on residential property, insofar as the latter "is not a project that progresses until it is finished. It is more perpetual in nature and does not require the town to monitor its progression.''); *Whittaker & Gooding Co.* v. *Scio*, 122 Mich. App. 538, 544, 332 N.W.2d 527 (1983) ("[T]he policy considerations justifying a time limitation . . . are much more compelling . . . where the proposed use is temporary in nature at the outset . . . . Further, a limitation on the length of time one may extract sand and gravel from the ground is definitely related to the use of the land, whereas limitation on the use of a building already constructed on the land is a limitation on the use of the building.'').[16]

---

[16] Special permits for excavation and other uses that, by their nature, result in physical changes to the property or effects on other properties often have been time limited. See, e.g., *Cioffoletti* v. *Planning & Zoning Commission*, 24 Conn. App. 5, 6–8, 584 A.2d 1200 (1991) (time limitation on special permit for commercial sand and gravel removal operation was deemed valid); *Kobyluck* v. *Planning & Zoning Commission*, Superior Court, Docket No. CV-00-121562-S, 2003 WL 283832, *5–6 (Conn. Super. January 27, 2003) (time limitation on excavation was deemed valid), rev'd in part on other grounds, 84 Conn. App. 160, 852 A.2d 826, cert. denied, 271 Conn. 923, 859 A.2d 579 (2004); see also *Rockford Blacktop Construction Co.* v. *Boone*, 263 Ill. App. 3d 274, 280, 635 N.E.2d 1077 ("The [five year] restriction would allow the [c]ounty to evaluate the use of the property as a quarry in light of any changes during the [five year] period, including whether the residential use has expanded. This factor suggests that the [five year] restriction is reasonable.''), appeal denied, 157 Ill. 2d 522, 642 N.E.2d 1303 (1994); *Houdaille Construction Materials, Inc.* v. *Board of Adjustment*, 92 N.J. Super. 293, 303–304, 223 A.2d 210 (App. Div. 1966) (concluding that five year limitation on special use permit for operation of bituminous

International Investors *v.* Town Plan & Zoning Commission

The temporal condition at issue in the present case does not violate any of the principles discussed previously. The condition is not tied to ownership. It does not even limit the duration of the permit. Cf. General Statutes § 22a-42a (g) (prescribing period of years after which wetlands permit expires). Rather, it is a time limitation on the performance of a condition of the permit. If the condition—completion of the proposed use—is timely performed, then the permit would continue indefinitely. The condition relates to the use of the property at its most elemental level; the property cannot be put to the use for which the permit was granted until the proposed construction and development have been at least substantially completed.

The question we must answer, then, is not whether a time limitation on the performance of a permit condition (completing construction) violates the tenet that special permits run with the land. The Appellate Court correctly concluded that it does not. The question is whether local zoning agencies have authority to adopt a regulation that imposes such a condition.

II

The defendants claim that the authority to adopt regulations imposing the temporal limitation at issue in the present case does not exist for two reasons. First, they contend that the legislature has dictated the time limit allowed to complete construction in the site plan statute. See General Statutes § 8-3 (i) and (m). They contend that this time limitation necessarily controls the special permit because special permits are inextricably linked to site plans. Second, they contend that the grant of municipal authority relating to special permits under

concrete plant was valid because court "regard[ed] the power to impose the limitation as reasonably incident to the [zoning] board's responsibility to see to it, among other things, that the use not be attended by any substantial detriment to the public good").

International Investors *v.* Town Plan & Zoning Commission

§ 8-2 (a) does not authorize zoning agencies to impose time limitations and cannot provide authority to impose a time limitation that conflicts with § 8-3 (i) and (m).

The plaintiff contends that authority to impose time limitations exists in § 8-2 (a). It further contends that the time limitation for completing construction that applies to site plans under § 8-3 is no impediment to the exercise of that authority because site plans and special permits serve entirely different functions.

We do not entirely agree with either of these views of the law. Insofar as the defendants appear to suggest that § 8-3 imposes its time limitation on special permits by operation of law, we disagree. We conclude that zoning agencies have authority under § 8-2 (a) to adopt a regulation under which a special permit would expire if construction for the proposed use is not completed within a specified period of time. We also conclude, however, that, if this authority is exercised, the time limitation cannot conflict with the deadline prescribed in § 8-3 (i) and (m).

Our analysis begins with the different purposes of, and relationship between, the special permit and the site plan. As we previously indicated, a special permit authorizes use of the property for a specific purpose, subject to conformance with zoning regulations and any other conditions necessary to vindicate the general purposes of zoning (protecting public health, safety, convenience, and property values). See, e.g., *Torrington* v. *Zoning Commission*, 261 Conn. 759, 769, 806 A.2d 1020 (2002); see also General Statutes § 8-2 (a). A public hearing is required before a special permit may be approved. See General Statutes § 8-3c (b); *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 253 Conn. 194. The special permit process involves the exercise of discretion. See *Irwin* v. *Planning & Zoning Commission*, supra, 244 Conn. 626.

International Investors *v.* Town Plan & Zoning Commission

Approval confers a right, albeit one that may be subject to conditions.

A site plan is a document that reflects, among other things, the location and dimension of buildings, structures, development features, and uses of the subject property. See *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 613–14; see also General Statutes § 8-3 (g). If the plan conforms with zoning and wetlands regulations, it must be approved; see General Statutes § 8-3 (g); and, thus, the issuance of a certificate of approval is "a mere ministerial act . . . ." *Kosinski* v. *Lawlor*, 177 Conn. 420, 427, 418 A.2d 66 (1979). No public hearing is required. Cf. *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 253 Conn. 186 n.2.

Despite (or perhaps because of) the different functions zoning agencies serve, it is a common practice among them to review site plans in connection with special permit applications, as the Fairfield zoning regulations required in the present case.[17] See, e.g., *Yagemann* v. *Planning & Zoning Commission*, 92 Conn. App. 355, 362–64, 886 A.2d 437 (2005) (addressing similar Greenwich regulations); *Kobyluck* v. *Planning & Zoning Commission*, 84 Conn. App. 160, 173, 852 A.2d 826 (addressing similar Montville regulations), cert. denied, 271 Conn. 923, 859 A.2d 579 (2004). This court explained the reason for this practice in *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 607: "[B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would

---

[17] In his treatise, Tondro suggests that efforts of zoning treatises to draw a clear distinction between special permits and site plans are not entirely successful and that, in practice, the distinction is not always clear-cut. See T. Tondro, supra, pp. 181–87.

International Investors *v.* Town Plan & Zoning Commission

adversely impact the surrounding neighborhood. The commission, therefore, must be allowed to examine the suggested proposal closely. The details of the proposal are laid out in the site plan, which is a physical plan showing the layout and the design of the site of a proposed use . . . . It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses. . . . As used in § 8-3 (g), a site plan is a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use. . . .

"When considering an application for a special permit, the commission is called [on] to make a decision as to whether a particular application . . . would be compatible with the particular zoning district, under the circumstances then existing. That determination can . . . be made [only] after a thorough examination of the specific site plan submitted. . . . [R]eview of a special permit application is necessarily dependent on a thorough review of the proposed site plan because, in fact, the grant of the special permit is usually contingent [on] approval of the site plan." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) Id., 613–14; see *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 641, 203 A.3d 645 (quoting *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 620), cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019).

Modifications to a site plan may be necessary to reflect the conditions imposed on the special permit use following the public hearing. Cf. *Garden Homes Management Corp.* v. *Planning & Zoning Commission*, Superior Court, judicial district of New Britain, Docket No. CV-07-4015729-S (November 3, 2009) (48 Conn. L. Rptr. 743, 750) (in affordable housing appeal, court remanded

International Investors *v.* Town Plan & Zoning Commission

case to zoning commission with direction to approve site plan and zoning permit applications "subject to reasonable and necessary conditions, not inconsistent with" court's decision, for specified physical improvements); *Ruggiero* v. *Zoning Commission*, Docket No. CV-00-0340891-S, 2001 WL 1178801, *1 (Conn. Super. September 5, 2001) (appeal from decision granting "a 'special permit/site plan amendment' to the defendant . . . for structural changes to one of its existing buildings" in case in which hearing was held on "amended special permit and attendant site plan"); *Mailloux* v. *Planning & Zoning Commission*, Docket No. 318723, 1995 WL 784981, *4–6 (Conn. Super. December 21, 1995) (reciting testimony at public hearing on application to revise/amend special exception permit, which included plans for construction of addition to current structure and creation of additional off-street parking spaces, as to whether off-street parking spaces were sufficient in number to meet zoning regulation's requirements). It is entirely proper, therefore, for the defendants to characterize the site plan and special permit as inextricably linked when both are required due to physical changes on or to the land to implement the permitted use. As we explain subsequently in this opinion, this close relationship would require the governing law to be in harmony. This relationship does not dictate, however, that every condition attached to one applies by operation of law to the other.

This court previously concluded that, even when zoning regulations required the special permit application to contain a site plan, that requirement does not render the site plan and permit legally inseparable. See *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 253 Conn. 191 ("unless otherwise set forth in the relevant town regulations, the special permit and the site plan are not inseparable and, therefore, do not meld into a single entity"). The court concluded in

*Center Shops of East Granby, Inc.*, that the statutes prescribing automatic approval of a site plan when the zoning authority fails to issue a decision within the prescribed time limit; see General Statutes §§ 8-3 (g) and 8-7d; did not apply to a special permit that was jointly submitted with its related site plan. See *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 194. The court distinguished a prior case in which it had reached a contrary conclusion on its unique facts; see id., 189–91; and held that §§ 8-3 and 8-7d would apply to a special permit only "when the application for the special permit is integral to and virtually indistinguishable from the application for the site plan, and when the use sought is a permitted use such that a public hearing is not required . . . ." Id., 191. The court in *Center Shops of East Granby, Inc.*, emphasized the significance of the fact that, in the prior case, the parties had stipulated at trial that the site plan and special permit were inseparable. See id., 189.

Applying this logic to the present case, we see no basis to conclude that the time limit to complete construction in § 8-3, governing site plans, would apply by operation of law to special permits. There is no textual basis to draw this inference. The absence of a parallel condition on special permits would not impede operation of the time limitation in § 8-3. Although, as we explain subsequently in this opinion, there is a strong policy justification for imposing a similar time limitation as a condition of the related special permit, we cannot conclude that such a condition must arise by operation of law.

We therefore turn to the question of whether § 8-2 (a) grants zoning agencies the authority to adopt a regulation conditioning the validity of a special permit on completion of construction within a specified time period. Examination of this provision reveals no express authority to impose a time limit on the performance of

International Investors *v.* Town Plan & Zoning Commission

a permit condition, by regulation or otherwise. Cf. Mass. Ann. Laws c. 40A, § 9 (LexisNexis 2018) ("[z]oning ordinances or by-laws shall provide that a special permit granted under this section shall lapse within a specified period of time, not more than 3 years . . . from the grant thereof, if a substantial use thereof has not sooner commenced except for good cause or, in the case of permit for construction, if construction has not begun by such date except for good cause"); Mass. Ann. Laws c. 40A, § 9 (LexisNexis 2018) ("[special] permits may also impose conditions, safeguards and limitations on time or use"). Nor, however, is there text from which we can infer a prohibition on the exercise of such authority. Cf. *Builders League of South Jersey, Inc.* v. *Burlington County Planning Board*, 353 N.J. Super. 4, 21–22, 801 A.2d 380 (App. Div. 2002) (holding that local zoning authority lacked authority to mandate by regulation that site plan approval and subdivision approval expire after three years when statute provided that " 'standards shall be limited to' " five enumerated requirements and other statute provided that " 'procedures and standards shall be limited to' " five enumerated requirements, all specific in nature and none of which related to duration).

Section 8-2 (a) instead provides in general terms, consistent with the broad aims of zoning law, that zoning regulations may require a special permit to be "subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values." See *Irwin* v. *Planning & Zoning Commission*, supra, 244 Conn. 627 (citing "general considerations such as public health, safety and welfare" as relevant to special permit conditions). Because the grant of municipal authority to enact zoning regulations is in derogation of the common law, this court has held that "this grant of authority should receive a strict construction and is not to be extended,

modified, repealed or enlarged in its scope by the mechanics of [statutory] construction.'' (Internal quotation marks omitted.) *Kuchta* v. *Arisian*, supra, 329 Conn. 535; see, e.g., *Lord Family of Windsor, LLC* v. *Planning & Zoning Commission*, 288 Conn. 730, 739, 954 A.2d 831 (2008) (commission lacked authority to adopt regulation under which proposed development that satisfies district's land use regulations governing type and density of activity may be subject to additional regulations as a distinct '' 'use of land' '' because of its particular size).

In considering whether the temporal condition at issue advances the purposes of zoning laws as contained in § 8-2 (a), we return to the point that, ''[w]hen considering an application for a special permit, the commission is called [on] to make a decision as to whether a particular application . . . would be compatible with the particular zoning district, *under the circumstances then existing*.'' (Emphasis altered.) *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 614. Those circumstances are not only the facts as they then exist but also the zoning laws then in effect. The greater the delay between approval and implementation of the permitted use, the greater the possibility that the circumstances and the zoning regulations will have materially changed. Although this possibility exists even when the property is timely put to the permitted use, the property owner's vested right in such cases must prevail.

The Appellate Court concluded in the present case that the temporal condition at issue vindicated the concerns in § 8-2 (a) because it would prevent the permit holder from unduly delaying the commencement of the use to a time when the surrounding circumstances may no longer support it. See *International Investors* v. *Town Plan & Zoning Commission*, supra, 202 Conn. App. 596–97. The defendants contended at oral argu-

344 Conn. 46 JULY, 2022 75

International Investors *v.* Town Plan & Zoning Commission

ment before this court that the failure to timely complete construction is the result of economic conditions outside the control of developers, not *undue* delay. We note, however, that Tondro's treatise endorses a rationale similar to the Appellate Court's reasoning with respect to the statutory time limits to complete subdivision developments: "These provisions are designed to prevent landowners from securing development approval under one set of regulations several years in advance of actual construction, and avoid a more contemporary and potentially more demanding set of regulations which might be in place when the project is commenced."[18] T. Tondro, supra, pp. 520–21; see also *848, LLC* v. *Zoning Board of Appeals*, Superior Court, judicial district of New Haven, Docket No. CV-15-6055150-S (June 6, 2016) (62 Conn. L. Rptr. 550, 553) ("Allowing stale permits to vest years later would undermine the effectiveness and benefits of engaging in contemporary special permit review. Although special permits are not personal to the owner of the subject property they are issued based on the particular circumstances presented to the [planning and zoning commission] at the hearing.").

Other jurisdictions have endorsed similar logic. See, e.g., *Lobisser Building Corp.* v. *Planning Board*, 454 Mass. 123, 127, 132, 907 N.E.2d 1102 (2009) (acknowledging concern that "a special permit should not ordinarily be warehoused indefinitely" and that preventing warehousing was aim of statute requiring zoning regulations to "provide that a special permit . . . shall lapse within a specified period of time, not more than two years . . . if a substantial use thereof has not sooner commenced except for good cause or, in the case of [a] permit for construction, if construction has not begun by such date except for good cause" (internal

---

[18] One treatise cites an extreme example of this problem in a case in which the permit holder proposed to build the development thirty years after it had secured subdivision approval. See T. Tondro, supra, p. 521 n.39.

quotation marks omitted)); *Bernstein* v. *Chief Building Inspector*, 52 Mass. App. 422, 428, 754 N.E.2d 133 (2001) (''[a] developer's mischief may run rampant absent the imposition of some time limits in the grant of a special permit''); *D.L. Real Estate Holdings, LLC* v. *Point Pleasant Beach Planning Board*, 176 N.J. 126, 136, 820 A.2d 1220 (2003) (''The time frame advances the public interest in prompt development of land in a manner consistent with the grant of preliminary approval . . . . It prevents the possibility that a future tentative 'potential' development, based on an earlier preliminary subdivision approval, would forever affect planning decisions concerning development in other areas.'' (Citation omitted.)).

Several other jurisdictions have treated similar temporal conditions as proper, at least if prescribed by regulation. See, e.g., *Cobbossee Development Group* v. *Winthrop*, 585 A.2d 190, 193–94 (Me. 1991) (town zoning ordinance providing that special permit ''shall expire if the work or change involved is not commenced within one year of the date on which the . . . [c]onditional [u]se is authorized, or change is not substantially completed within [two] years'' was proper exercise of authority because ''use should be either acted [on] diligently or eliminated because of the nature of permits to build in areas that require special protection'' (internal quotation marks omitted)); *Petrocci* v. *Zoning Board of Appeals*, 42 App. Div. 2d 676, 676, 344 N.Y.S.2d 291 (1973) (upholding denial of extension of two year time limit to complete project authorized by special permit); *Lucia* v. *Zoning Hearing Board*, 63 Pa. Commw. 272, 274, 437 A.2d 1294 (1981) (concluding that permit holder could not obtain extension of conditional use permit because permit had expired under ordinance providing that, ''[i]f the work described in any application for zoning approval has not begun within six months from the date of issuance thereof, said permit shall expire

International Investors *v.* Town Plan & Zoning Commission

and it shall be cancelled by the [z]oning [a]dministrator'' (internal quotation marks omitted)); see also *Roy* v. *Kurtz*, 357 So. 2d 1354, 1356 (La. App.) (considering whether actions taken by holder of variance were sufficient to satisfy ordinance providing that variance shall not be valid unless substantial construction has commenced in accordance with plans for which variance was authorized), writ denied, 359 So. 2d 1307 (La. 1978); *Kolt* v. *Zoning Board of Appeals*, 159 App. Div. 2d 625, 626, 553 N.Y.S.2d 24 (1990) (upholding dismissal of variance holder's appeal from zoning board's determination that variance had lapsed under ordinance providing that variance shall become null and void if work has not been "commenced and diligently prosecuted within one (1) year" after granting of variance (internal quotation marks omitted)); cf. *Demonbreun* v. *Metropolitan Board of Zoning Appeals*, 206 S.W.3d 42, 48–49 (Tenn. App. 2005) (The court concluded that the time limitation for the special permit was permissible because "[t]he governing ordinance authorizes the [Board of Zoning Appeals] to establish permit expiration dates. . . . The [board] has an interest in ascertaining whether a permit holder is abiding by its standards and conditions. Furthermore, nothing in the applicable zoning law precludes the [board's] establishment of a permit expiration date solely for the purpose of review and enforcement purposes." (Citation omitted.)), appeal denied, Tennessee Supreme Court (June 26, 2006).

Connecticut zoning regulations reproduced in the plaintiff's appendix to its brief to this court also demonstrate the ubiquity of the exercise of this authority by municipal zoning agencies all across this state.[19] When

---

[19] In addition to the type of temporal condition at issue in present case, the appendix to plaintiff's brief to this court reveals that many municipalities across the state have adopted regulations that impose other types of time-limited conditions relating to putting the property to the use for which the permit was issued. Some of the most common conditions provide that a permit will be extinguished if development has not commenced or if substantial development has not occurred by a specified period, if necessary zoning,

International Investors *v.* Town Plan & Zoning Commission

the legislature adopted the 2021 public acts extending deadlines for special permits that had not yet expired; see P.A. 21-34, § 7; P.A. 21-163, § 5; it necessarily manifested both its awareness and ratification of this practice.[20] Thus, whatever doubts might exist as to the validity of the exercise of this authority under § 8-2 (a), the pertinent text of which is unchanged since the effective date of Fairfield Commons' special permit, are dispelled by adoption of the 2021 public acts. Cf. *Pollio* v. *Planning Commission*, 232 Conn. 44, 56, 652 A.2d 1026 (1995) (concluding that planning commission had authority under General Statutes § 8-1c to adopt ordinance in light of subsequent amendment to another related statute that clarified legislature's original intent).

We therefore agree with the Appellate Court that the adoption of regulations conditioning the validity of special permits on completion of construction within a certain period falls within the commission's regulatory authority under § 8-2 (a). The Appellate Court's misstep was its failure to consider the effect of the statute prescribing the time limitation for completion of develop-

building, or other permits are not acquired by a specified period, or if the permitted use has been abandoned for a specified period of time.

[20] There is a scant legislative record relating to the emergency legislation that adopted the 2021 land use approval extensions. The first extensions proposed were added to the bill that was to become P.A. 21-34 after public hearings were held, and no public hearings were held on P.A. 21-163. The background section of the bill analysis for what became P.A. 21-34 does, however, note the Appellate Court's decision in the present case recognizing municipal authority to impose time limits on special permits. See Office of Legislative Research, Bill Analysis for Substitute House Bill No. 6531 (as amended by House "A" and Senate "A"), An Act Concerning the Right to Counsel in Eviction Proceedings, the Validity of Inland Wetlands Permits in Relation to Certain Other Land Use Approvals, and Extending the Time of Expiration of Certain Land Use Permits, p. 10, available at https:// www.cga.ct.gov/2021/BA/PDF/2021HB-06531-R02-BA.PDF (last visited July 13, 2022). That decision had been issued a few months before the emergency legislation was proposed. Fairfield Commons acknowledged at oral argument before this court that the provision extending special permit deadlines was likely a reaction to that decision.

International Investors *v.* Town Plan & Zoning Commission

ment as a condition of the continuing validity of the site plan.

We agree with the defendants that the legislature has manifested a clear intention to afford property owners a substantial period of years to complete development necessary to put a plan or permit into effect. At the time the commission granted Fairfield Commons' special permit, this intention was reflected in the statutory scheme then in effect, which provided no less than five years but no more than ten years to complete work. See General Statutes (Rev. to 2005) § 8-3 (i). The legislature prescribed the same period of years to complete work in connection with subdivision plans as well as for the validity of wetlands permits; see General Statutes (Rev. to 2005) §§ 8-26c and 22a-42a (d) (2); and this consistency has continued to be reflected in increasingly longer extensions of time since provided to respond to economic downturns, including, in the most recent public acts, for special permits. See Public Acts 2009, No. 09-181; P.A. 11-5; P.A. 21-34; P.A. 21-163. A uniform time limitation not only aids enforcement of the plans and permits but also ensures notice to interested parties in the absence of any requirement that the nullification of a special permit must be recorded on the land records.[21] See General Statutes § 8-3 (i) ("[t]he certifi-

---

[21] Among the numerous municipal zoning regulations addressing special permits that the plaintiff has reproduced in the appendix to its brief, we found only two that provided for the expiration or nullification of the special permit to be recorded. See Derby Zoning Regs., § 195-47 C (2) ("[f]ailure to complete all work as approved under the granting of the special exception within five years from the date of approval or a lesser time period if so specified by the [Planning and Zoning] Commission shall result in the automatic expiration of the approval, provided that the [Planning and Zoning] Commission files notice of such expiration on the city land records"); East Hartford Zoning Regs., § 207.7 (a) ("Any *person*, firm or corporation having obtained approval of a special permit application under this section shall complete all work and comply with all conditions of approval of said site plan approval within two (2) years after said approval. In the event that all such work and/or all such conditions are not completed within said time, the approval granted shall become null and void. The Planning and Zoning Commission may file statement to that effect upon the land records if it deems necessary in its best interest." (Emphasis in original.)).

International Investors *v.* Town Plan & Zoning Commission

cate of approval of such site plan shall state the date on which such five-year period shall expire'').

Providing in the special permit a shorter time limitation to satisfy the same condition attached to the site plan does not result in a mere lack of harmony with this statutory scheme. It would conflict with, and thereby impede operation of, the site plan statute, § 8-3. Invalidation of Fairfield Commons' special permit for failure to complete construction within the regulatory period in effect upon its April, 2009 approval (two years from approval) would effectively invalidate the site plan because the latter would have no operative effect in the absence of a valid special permit. Yet, the site plan statute then in effect provided a minimum of at least three more years to satisfy that condition.

Under preemption principles, ''[a] local ordinance is preempted by a state statute . . . whenever the local ordinance irreconcilably conflicts with the statute. . . . Whether an ordinance conflicts with a statute or statutes can . . . be determined [only] by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives. . . . [T]hat a matter is of concurrent state and local concern is no impediment to the exercise of authority by a municipality through [local regulation], so long as there is not conflict with the state legislation. . . . Where the state legislature has delegated to local government the right to deal with a particular field of regulation, the fact that a statute also regulates the same subject in less than full fashion does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner. . . . A regulation is not necessarily inconsistent because it imposes standards additional to those required by a statute addressing the same subject matter. . . . Where local regulation merely enlarges on the provisions of a statute

International Investors *v.* Town Plan & Zoning Commission

by requiring more than a statute, there is no conflict unless the legislature has limited the requirements for all cases. . . . As long as the local regulation does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict.'' (Citations omitted; internal quotation marks omitted.) *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 295–96, 105 A.3d 857 (2015).

There can be no question that, if a regulation provided for the expiration of a *site plan* for failure to complete work within a shorter period of time than that prescribed under § 8-3 (i) and (m), the regulatory time limitation would be preempted; the site plan statute confers discretion on zoning agencies to extend that deadline, not to shorten it. The statutorily guaranteed minimum period of validity assures a developer that it will not be required to comply with subsequent changes to zoning regulations, as long as the project is completed within that period. If a zoning regulation prescribes a shorter period of time to complete that same work as a condition of the validity of the special permit, the regulation effectively reduces the time limitation prescribed in § 8-3.[22] Cf. *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 106–108, 127–31, 774 A.2d 969 (2001) (town ordinance banning all cigarette vending machines within its borders was not preempted by statute limiting placement of machines because both statute and ordi-

_____

[22] Although the defendants emphasize that the time limits cannot differ, they do not elaborate on the practical implications of different time limitations; nor does the plaintiff. Nonetheless, it seems self-evident that, once the special permit is rendered null and void, the site plan has no practical effect. The property owner would be free, of course, to apply for another special permit, but there is no guarantee that the permit would be granted or would be granted subject to conditions acceptable to the owner, and a new site plan may be required. Zoning regulations may have changed in the intervening period. Even if the zoning authority grants the special permit and the owner can rely on the original site plan, construction could be delayed until a decision has been rendered on the special permit application.

International Investors *v.* Town Plan & Zoning Commission

nance were prohibitory, ordinance went further in its prohibition but neither authorized what legislature had forbidden nor forbid what legislature had authorized, and ordinance furthered legislative purpose of preventing minors access to cigarettes). Although there may be scenarios under which this effect could be avoided; see footnote 22 of this opinion; it is evident that the statutory scheme is intended to provide predictability when development plans are proposed.[23] Accordingly, a regulation that would impose a shorter time limit to satisfy the same condition thereby "frustrates the achievement of the state's objectives"; (internal quotation marks omitted) *Rocky Hill* v. *SecureCare Realty, LLC*, supra, 315 Conn. 295; and would be preempted.

In light of this conclusion, we need not consider the defendants' challenge to the propriety of the Appellate Court's "finding" that Fairfield Commons failed to request an extension of time before the original two year time limitation in its special permit expired in April, 2011. Even if the Appellate Court were correct, the two year time limitation in the regulation would not have been enforceable because the statutory site plan deadline for construction had not yet expired. The record indicates that the February, 2011 amendment to Fairfield's zoning regulations was an attempt to remedy this defect.

The only question remaining is whether the special permit regulation in effect in April, 2009, when Fairfield Commons' special permit and site plan approval went

---

[23] The 2021 public acts reflect this predictability and reinforce the conclusion that the legislature did not intend to confer unfettered discretion on local zoning agencies to impose time limits to complete construction as a special permit condition. Those acts extended special permit construction deadlines for a set period of years from the permit approval date, not from the construction deadline imposed by the local zoning authority. Special permits governed by the special act, consequently, would be subject to the same deadline regardless of whether the municipality's zoning regulation provided two years or ten years to complete construction.

International Investors *v.* Town Plan & Zoning Commission

into effect, should be deemed invalid or whether we should apply a judicial gloss to avoid the conflict with the site plan statute, § 8-3. We conclude that the latter course of action is more consistent with the commission's intent, as expressed in its 2011 zoning amendments and its 2018 decision granting Fairfield Commons' request for a five year extension of time for both the special permit and the site plan. See *Commissioner of Public Health* v. *Freedom of Information Commission*, 311 Conn. 262, 275–76, 86 A.3d 1044 (2014) ("In order to construe the regulations consistently . . . we would need to either treat as superfluous the language in [one federal] regulation referring to records created from a party's own files or engraft such language as a judicial gloss onto [another federal] regulation. . . . [T]here are strong indications that the latter is consistent with the intent of Congress and the federal agency implementing the federal acts." (Footnote omitted.)).

Because the statutory period governing development in connection with the defendant's site plan had not expired when Fairfield Commons requested an extension of time in 2018, the defendant's special permit could not have expired on that basis. Accordingly, the Appellate Court incorrectly concluded that Fairfield Commons' special permit expired in April, 2011. In accordance with the statutory amendments extending the time limits for site plans, the commission properly granted Fairfield Commons' request for an extension of time until April, 2023.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the case to the trial court with direction to deny the plaintiff's appeal.

In this opinion the other justices concurred.